# MARY M. CLARK v. WILLIAM M. DYE.[1]

February 15, 1924.

No. 23,751.

**Signature to statutory notice by attorney of owner sufficient.**

1. A notice to terminate a contract for deed for default in payment is sufficient in respect to signature when it describes the contract so that it could be identified, even though it is unsigned by the owner, but is signed by her attorney individually, but to the left of the signature is the attorney's name followed by language showing that he is the attorney for the owner.

**Notice need not specify amount claimed to be due.**

2. The statute does not require such notice to specify the amount claimed to be due.

**Notice not avoided by erroneous allegation subsequently corrected.**

3. An erroneous allegation in the original complaint to the effect that the amount in default covered all money unpaid which is corrected in an amended complaint, does not put a construction on the notice itself so as to render it void.

**Defense legal, not equitable.**

4. An alleged defense *held* to be in nature legal and not equitable.

**Agreement without consideration not binding.**

5. An agreement if vendee would make current payments, vendor would carry along past due payments without default, is without consideration and therefore not a contract.

**No equitable defense—no estoppel—no waiver.**

6. Answer and offers of proof *held* not stating an equitable defense; and also not stating facts sufficient to constitute estoppel; and also as not stating facts sufficient to constitute waiver.

**Waiver.**

7. Essential elements of waiver specified. Waiver cannot be predicated on indefinite language.

[1]Reported in 197 N. W. 209.

**Vendee in default must prove tender of payment.**

    8. A vendee in default must do more than to show that a third person was ready, willing and able to furnish the money for him. He must tender payment.

**When vendee loses rights.**

    9. The vendee loses all rights at the expiration of the 30 days.

**Practice in forcible entry action in municipal court.**

    10. The municipal court of Minneapolis in forcible entries and unlawful detainers cannot entertain: (1) A motion for a new trial; (2) a motion for judgment notwithstanding the verdict. It can, however: (a) Dismiss an action; (b) charge a jury; (c) direct a verdict; (d) entertain and determine a motion for judgment on the pleadings.

    Action in unlawful detainer in the municipal court of Minneapolis. The case was tried before Nordbye, J., who denied plaintiff's motion for judgment on the pleadings, and directed a verdict for plaintiff. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

    *Thompson, Hessian & Fletcher, Karl H. Covell* and *Frank Hopkins,* for appellant.

    *Robert Cowling,* for respondent.

WILSON, C. J.

    This is an action in forcible entry and unlawful detainer. The plaintiff, through her attorney in fact, on December 1, 1920, made a contract for deed, with defendant, for certain city real estate. The purchase price was $7,300, of which sum $1,000 was paid in cash, $3,000 was paid by assuming a mortgage, and the balance was to be paid in monthly payments of $75 each beginning December 1, 1920. The contract was in the usual form and provided for cancelation on 30 days' notice, if in default.

    Plaintiff, on May 7, 1923, caused to be served on defendant a notice of cancelation of the contract which was in the following form, to-wit:

"To William M. Dye:

"Whereas William M. Dye entered into a contract, in writing, with Mary M. Clark, bearing date of December 1, 1920, wherein and whereby the said Mary M. Clark agreed, upon certain terms and conditions therein expressed, to convey to the said William M. Dye that certain real estate [description given here], and wherein and whereby said William M. Dye agreed to pay as and for the purchase price of said property the sum of SEVENTY-THREE HUNDRED ($7,300.00) DOLLARS, of which sum One Thousand ($1,000.00) Dollars was paid on or before January 1, 1921, and Three Thousand ($3,000.00) Dollars is in the form of a mortgage on the property which said William M. Dye assumed and agreed to pay as part of the said purchase price both principal and interest at the rate of six per cent per annum, and Thirty-three Hundred ($3,300.00) Dollars to be paid in monthly installments of Seventy-five ($75.00) Dollars each, commencing December 1, 1920, and thereafter on the first day of each and every month, bearing interest at the rate of six per cent per annum, and,

"Whereas the prompt and full performance by said William M. Dye of his said agreement to pay the interest on the mortgage and the said monthly installments as in said contract set forth, was in each case made, in and by such contract, one of the conditions upon which said Mary M. Clark was to convey the said property to the said William M. Dye, and,

"Whereas default has been made by the said William M. Dye in the conditions of said contract, which default consists in his failure to pay the interest on the said mortgage and failure to pay several installments which are payable monthly according to the conditions set forth in the said contract,

"NOW THEREFORE, notice is hereby given that the said contract will terminate thirty (30) days after the service of this notice, unless prior thereto you shall comply with the conditions of said contract in which default has been made, and pay the costs of this service of this notice. Payment of the interest on the said mortgage may be made at the office of R. S. Leighton, 848 Security Building, Minneapolis, Minnesota; payment of the installments of the said

Thirty-three Hundred ($3,300.00) Dollars, which are due and owing, may be made at the office of the said R. S. Leighton.

"Dated at Minneapolis, Minnesota, May 7, 1923.

(Signed) "ROBERT COWLING

"ROBERT COWLING,
Attorney for Mary M. Clark,
846 Security Building,
Minneapolis, Minnesota."

The complaint sets forth the usual facts and alleges the service of said notice and says that the defendant failed to comply therewith; and alleges that defendant lost all right by his failure to act within 30 days after service thereof.

The answer admits that plaintiff is the owner of the premises; it admits and alleges the making of the contract for deed; it alleges that by the terms of the contract defendant was to pay the taxes, that he was to have possession and is in possession; that on or about November 1, 1922, he had become in arrears in reference to some payments to be made under and pursuant to the terms of said contract, and pleads:

"and it was agreed between the parties thereto that thereafter defendant should keep paid up to date said monthly payments of Seventy-five and 00/100 ($75.00) Dollars, and in the event the said payments were so paid that the balance in arrears should be carried along. That beginning with the 15th day of November, 1922, the said defendant paid said monthly payments to the plaintiff of Seventy-five 00/100 ($75.00) Dollars per month, and paid the interest on the mortgage, without exception of one payment, up to and including payment on the 21st day of April, 1923, and said last payment was made on the 21st day of April, 1923.

"Defendant admits that on the 7th day of May, 1923, a certain notice, purporting to be a notice of cancellation of said contract, was handed to the defendant, but defendant alleges that said notice was insufficient in law and in fact to cancel the said contract, and particularly defendant alleges that by reason of said

extension of time for payment the said notice was of no force or effect whatever.

"That between the 7th day of May, 1923, and the 7th day of June, 1923, during which said date it is alleged in plaintiff's complaint that the defendant had a right to comply with the terms and conditions of said contract, the plaintiff, through her attorney in fact, waived compliance with the terms of said purported notice of cancellation; that on or about the 31st day of May, 1923, defendant paid the real property taxes on said property in the sum of One Hundred Thirty-three and 36/100 ($133.36) Dollars and at that time notified the plaintiff that he was about to pay said taxes and that he was prepared and would pay the balance due on said contract. That then and there the defendant demanded of the plaintiff an abstract of said property so that he might examine same, and plaintiff at all times refused to furnish said abstract or to tell defendant where he could get said abstract until after the 7th day of June, 1923. That from the 31st day of May, 1923, up to and including the 7th day of June, 1923, the defendant was, at all times, ready, able and willing, and so notified the plaintiff to pay up the balance due on said contract and interests and costs, upon being given a good and marketable title to said real property.

That plaintiff refused or neglected to furnish an abstract and made it impossible for defendant to perform his said agreement prior to June 7, 1923."

The complaint contains this language, to-wit:

"Complainant further states that on the 21st day of April, 1923, there became due and payable from said William M. Dye to this Complainant for the agreed price of said premises, pursuant to the said contract, the sum of more than Five Thousand Two Hundred and Fifty Dollars, including a mortgage of Three Thousand Dollars assumed by defendant, which sum is now justly due from said William M. Dye to this Complainant for the agreed price of said premises, and that no part of said sum has ever been paid."

In the amended complaint the above language is superseded by this language, to-wit:

"That on the 7th day of May, 1923, the said William M. Dye was in default and had breached the conditions of the hereinbefore mentioned contract, and that on the 7th day of May, 1923, the said William M. Dye was personally served with notice of cancellation of this contract, a copy of which notice is hereto attached and herewith made a part of this complaint. That this notice was served on said day personally on the said William M. Dye as more particularly appears in the Affidavit of Service of said notice, a copy of which is hereto attached and herewith made a part of this complaint. That by the terms of said notice, the said defendant was given a period of thirty days from the 7th day of May, within which to comply with the conditions of said contract, and that during the said time, the said defendant totally failed to comply with the conditions of said contract and that on the 7th day of June, 1923, the said defendant William M. Dye forfeited and lost all and every right in and through said contract obtained."

When the case was called for trial the defendant objected to the complaint, because, first, it did not allege or show what the default was, and secondly, that it alleged $5,250 due and payable on April 21, 1923, and this included the mortgage of $3,000 and all the unmatured monthly payments. This objection precipitated the filing of the amended complaint.

In the course of trial the court excluded defendant's offer of proof to the effect that defendant talked with plaintiff's agent November 1, 1922, and that the agent told defendant that, if he would thereafter keep his $75-a-month-payments up to date, and payments on the mortgage, he would be carried along without any default and that defendant then said he would do that.

Defendant requested the court to refer the case to the district court for trial, and this was refused.

Defendant, in the course of trial, made an offer of proof, to the effect that after the notice of cancelation was served upon him and before the 30 days had expired, he told plaintiff's agent that he was going to pay the first half of 1922 taxes upon the property, and that he was going to get the balance of the money and that he would be able to pay plaintiff and asked the agent what he was willing

to do about it, "Whether or not he should pay the taxes, what Mr. Leighton was going to do about it." Mr. Leighton answered him, in conversation over the telephone. He said: "I will be fair with you. I will be fair with you." Also, to show that, he said that he might have all the money; that the money had been promised and was ready. He offered to show that he asked for an abstract and was refused.

Defendant also offered to show that after he paid $133.36 taxes and he reported that to the agent, Mr. Leighton, who then said: "I am going to be fair with you." That he then told the agent where he was going to get the money and that the agent answered: "You can't get the money; it can't be done."

Defendant also offered to show that he could not get the abstract until after the 30 days expired; that after the 30 days expired he got the abstract from the mortgagee, found title good, and that the man who was loaning the money to defendant was ready, willing and able to tender the balance due. That after the expiration of the 30 days and on July 24, 1923, he made a legal tender of $2,280, that being the amount unpaid, above mortgage, and demanded performance of the contract which was refused on the ground that the 30 days had gone by. Then defendant tendered this amount of money in open court with the same demand. Defendant offered to prove that within the 30-day period he asked for a statement to show the amount required to redeem and that he was given a statement thereof; and defendant offered to prove that from May 15, 1923, up to the time of trial he was, through the aid of one W. W. Morse, ready, willing and able to pay the correct amount unpaid by him to Mrs. Clark, and he, during said 30-day period, had such money ready. All these offers were rejected.

At the close of the evidence the court granted plaintiff's motion for a directed verdict. Judgment was entered and defendant has appealed therefrom.

Appellant challenges the sufficiency of the notice, because: (a) It was not signed by plaintiff and purports to be signed merely by Robert Cowling, and (b) because the notice does not specify the amount that was due at the time of service.

While the method of signing this notice is not to be encouraged, it appears from the information given immediately to the left of the signature of Robert Cowling, that his name is given as the attorney for the plaintiff. The notice describes the contract so that it could be identified and we conclude that it is sufficient as to signature to comply with section 8081, G. S. 1913. First Nat. Bank v. Coon, 143 Minn. 262, 173 N. W. 431; Holmes v. Wolfe, 154 Minn. 8, 190 N. W. 980.

The failure of this notice to state the exact amount in default is not fatal. The law does not require such notice, in order to be sufficient, to be so definite that a stranger might determine the amount in default. This notice is to the vendee and is for his benefit. Needles v. Keys, 149 Minn. 477, 184 N. W. 33; Mathwig v. Ostrand, 132 Minn. 346, 157 N. W. 589. Such proceeding for the cancelation of a land contract is in the nature of a statutory strict foreclosure. Nolan v. Greeley, 150 Minn. 441, 185 N. W. 647. Needles v. Keys, supra. The statute requires the notice to specify the conditions in which default has been made, but it does not require the notice to state the amount or amounts in default, nor does it require a statement of the particulars in which the default consists. The contention of the appellant in this respect is contrary to the prior decisions of this court. Hage v. Benner, 111 Minn. 365, 127 N. W. 3; First Nat. Bank v. Coon supra. Moreover this notice was such as to advise the vendee of the nature of the default and he would be able to determine the exact amount to be paid.

It is urged that because the respondent inserted in her original complaint the language, above quoted, which is superseded by the amended complaint, the claim that the entire unpaid principal, instead of mere payments which were in default, was due, she put a construction on the notice of cancellation to the effect that it was given on the theory that all unpaid money was due and in default, and that if such was the intent of the notice it would be a nullity. Appellant claims, because of this alleged construction on the part of respondent of her own notice of cancelation, she has rendered the notice void notwithstanding the amended com-

plaint. Such claim is untenable, and the record does not justify such conclusion. In the absence of definite proof to the contrary, it must be presumed that the language of the notice saying "failure to pay several installments which are payable monthly according to the conditions set forth in the contract" referred only to past due payments. In fact this language is so specific that the language of the complaint is so in excess of the notice that the language of the complaint is obviously a mistake. The notice being sufficient, the appellant's motion to dismiss at the close of respondent's evidence was properly denied.

Taking up the merits of appellant's case as alleged in his answer and as covered by various offers of proof, we are met with the suggestion that the defense, if any, tendered was an equitable defense, and hence not triable by the municipal court. Wm. Weisman Realty Co. v. Cohen, 157 Minn. 161, 195 N. W. 898; Wm. Weisman Holding Co. v. Miller, 152 Minn. 330, 188 N. W. 732. With this contention we do not agree. This alleged defense is not an equitable one, but a legal defense and were it sufficient to amount to a defense, would be a legal defense triable in the trial court. It is claimed by appellant that in November, 1922, appellant agreed to make his current payments and respondent agreed to carry along the past due payments without default. This did not amount to a contract for lack of consideration. Appellant did not agree to do anything that he was not already legally obligated to do. Had there been a consideration and terms of definite agreement, it might have amounted to a legal defense. In the absence of consideration, this indefinite talk was wholly immaterial and was properly excluded.

There was no equitable defense involved in this action and there was nothing to support the application to have the case transferred to the district court. It is argued that the doctrine of estoppel is applicable. It is sufficient to say that neither the answer, nor the offers of proof, include the necessary facts to constitute estoppel so as to have it available in this action either in equity or in law. Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495; Friend v. Friend, supra, page 31.

It is also claimed that the offers of proof should have been received in proof of waiver as a legal defense. It is urged that the same talk of making current payments and the past due payments being carried without default, is admissible in proof of waiver; and, it is properly urged that waiver does not require a consideration. Mee v. Banker's Life Assn. 69 Minn. 210, 72 N. W. 74; Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106, 106 N. W. 485, 4 L. R. A. (N. S.) 231, 7 Ann. Cas. 1144.

A waiver is a mere voluntary relinquishment of a right, cannot be regarded as a contract, and does not require a consideration to support it. 8 Words and Phrases, 7378. It is the intentional relinquishment of a known right. Both intent and knowledge, actual or constructive, are essential elements. Parsons, Rich & Co. v. Lane, supra. Any conduct on the part of the person entitled to insist upon the right which is inconsistent with an intention to claim it, may amount to a waiver as a matter of law; the intent to waive being a matter of legal inference from the disclosed inconsistent conduct. Knox-Burchard Mercantile Co. v. Hartford Fire Ins. Co. 129 Minn. 292, 152 N. W. 650. In the absence of facts creating an estoppel, and such facts do not here exist, a court will not declare the waiver of an existing legal right, unless an intention to make such waiver is clearly shown. Kubu v. Kabes, 142 Minn. 433, 172 N. W. 496. The right which respondent had, both before and after serving the notice, was a valuable one to her and she should be held to have waived it only on a clear showing of an intention to do so, or of facts from which an inference of waiver would follow as a matter of law by necessary implication. Henry v. Hutchins, 146 Minn. 381, 178 N. W. 807. "Waiver is either the result of an intentional relinquishment of a known right or an estoppel from enforcing it." Hohag v. Northland Pine Co. 147 Minn. 38, 179 N. W. 485. Waiver and estoppel are entirely different. With these observations in mind, it is obvious that neither the facts embraced in the proofs offered, nor the facts alleged in the answer, would amount to a waiver.

The payment of the taxes by appellant was a contractual duty of his own. He apparently paid the same before delinquency antici-

pating that he would be able to get the money and make redemption. True, he took the matter up with respondent's agent who answered: "I will be fair with you." This language is so general and opinion like that it had little, if any, meaning. From respondent's standpoint, it would probably be contended that she has been fair with him. The appellant was not justified in relying, if he in fact did, on such a statement. When appellant disclosed to the agent that he would pay the taxes, he also advised that he was going to get the money and pay. The fact that respondent furnished the statement showing the amount in default is not in the least inconsistent with the belief that appellant would pay up before the 30 days expired. That was a usual and natural thing to do. If respondent did not furnish the abstract, which appears to have been in the hands of the mortgagee, in season, the appellant could have protected his rights by tendering his money to respondent and demanding his rights.

The tender of payment after the 30 days expired, and the tender of payment in open court, were futile. All rights were lost by the expiration of the time in which appellant had the right to make his payments and protect his rights. It was not sufficient for appellant to show that Mr. Morse was ready, willing and able to furnish the money for him; it was necessary for appellant to tender payment, and this he did not do. The trial court was right in rejecting the offers of proof.

Appellant questions the powers of the trial court, the municipal court of Minneapolis, in actions of forcible entries and unlawful detainers which have heretofore in some respects had the consideration of this court. Wm. Weisman Holding Co. v. Miller, 152 Minn. 330, 188 N. W. 732; Lilienthal v. Tordoff, 154 Minn. 225, 194 N. W. 722. Per Curiam opinion, and not the opinion of Mr. Justice Dibell, 191 N. W. 823; Wm. Weisman Realty Co. v. Cohen, 157 Minn. 161, 195 N. W. 898.

Chapter 34, p. 599, Sp. Laws 1889, relating to this municipal court, by a portion of section 2 provides:

"Where no provision is otherwise made in this act, said municipal court is vested with all the powers which are possessed by the

district courts of the state, and all laws of a general nature apply to said municipal court, so far as the same can be made applicable, and not inconsistent with the provisions of this act, and the jurisdiction of said court shall be co-extensive and with the limits of said Hennepin county."

Section 6 also provides:

"It shall have and possess all the powers usually possessed by courts of record at common law, subject to the modifications of the statutes of this state applicable to courts of record, except that it shall not have jurisdiction to issue writs of habeas corpus, quo warranto, ne-exeat, mandamus, prohibition or injunction."

Section 14 in part says:

"And said municipal court shall have jurisdiction of action of forcible entries and unlawful detainers and may fix return days for such actions on other than the regular return days of said court, and chapter eight-four (84) of the general statutes [ G. S. 1913, §§ 7656-7672], relative to the forcible entries and unlawful detainers, shall apply to said municipal court," etc.

The municipal court act requires that the judge thereof shall be "a person learned in the law, and duly admitted to practice in all the courts of this state." We take judicial notice of the fact that the municipal courts of the state are presided over by lawyers of ability and we are not inclined to minimize their powers.

The municipal court in cases of this character is of special and limited jurisdiction in the matter and in the trial of cases must pursue the manner designated by the legislature. The statute regulating cases of this character was designed to be summary and speedy, and does not contemplate motions that might work delays, and such court cannot entertain motions for new trials. Lilienthal v. Tordoff, supra. For the same reasons stated in the Lilienthal case, we hold that such court in an action for forcible entry and unlawful detainer cannot entertain a motion for judgment notwithstanding the verdict. The prompt entry of judgment and a delay of but 24 hours, to allow an appeal, before issuing a writ of

restitution, shows clearly an intention by the legislature that the necessary delay incident to a motion for new trial or for judgment notwithstanding the verdict is not to be tolerated.

It cannot be said however that when the legislature made the general statute (sections 7656-7672, G. S. 1913), applicable (section 14, chapter 34, Sp. Laws 1889, p. 607), to actions in forcible entries and unlawful detainers, that it so reduced the municipal court to the ranks of a justice court that it lost all its attributes as a municipal court. The legislature obviously intended to preserve unto the municipal court, its own individual characteristics as a court, except as necessarily taken away by the language of the statute. It was never intended to limit its power to effectively carry out the provisions of the forcible entry and unlawful detainer act without delay, nor can we presume that the legislature was unmindful of the fact that such a court is equipped by a judge who is learned in the law. The purpose was to zealously guard the summary character of forcible entry proceedings which until the creation of municipal courts, rested exclusively with the justice courts.

Section 7503, G. S. 1913, which says "no justice of the peace shall charge the jury" was upon our statute in 1889. Section 4, chapter 65, G. S. 1878. It is not the general statute relative to forcible entries and unlawful detainers that prevents a justice of the peace from charging the jury, but it is the general statute just quoted. Neither should this general statute relative to actions in forcible entries and unlawful detainers in any way destroy the otherwise conceded power of the municipal court to charge the jury. Such court has the authority to grant a motion for judgment upon the pleadings. Norton v. Beckman, 53 Minn. 456, 55 N. W. 603; Lloyd v. Secord, 61 Minn. 448, 63 N. W. 1099. It should necessarily follow and we hold that the trial court has authority in actions of forcible entries and unlawful detainers to (a) dismiss an action; (b) to charge the jury; (c) to direct a verdict; (d) and to entertain and determine a motion for judgment on the pleadings.

In this case the trial court properly directed a verdict for respondent, and the judgment entered in the trial court is affirmed.

STONE, J. (dissenting in part.)

I concur heartily in this opinion except insofar as it holds the notice of cancelation sufficient. There I dissent, but I must confess that my views may be out of line with Hage v. Benner, 111 Minn. 365, 127 N. W. 3.

It seems to me that we are going altogether too far when we hold that the designation of the default as "failure to pay the interest on the said mortgage and failure to pay several instalments which are payable monthly" under the contract is a compliance with the statutory requirement that the notice *specify* the conditions in which default has been made.

What and how much interest, what and how many instalments of the purchase money are in default? A notice leaving such questions unanswered does not measure up to my idea of what is required by a *specification* of the conditions of default, for to specify is to point out with some particularity.

Considering the purpose and possible effect of a notice of cancelation—the result may be a strict foreclosure of an equitable interest under circumstances of great hardship to the vendee—I think some standard should be adopted for determining when conditions of default have been specified with sufficient particularity. There is an obvious and appropriate test, and that is whether, taking notice and contract together, it can be ascertained from the documents alone, and an examination of the public records as to taxes, what must be done in order to remove the default complained of.

A notice falling short of that measure of definition does not seem to me to fulfil the purpose of the statutory requirement.

The vendee's interest is frequently a very valuable one. It may be his entire estate. It may have been the subject of repeated assignment or encumbrance, or both. Considerations of policy as well as of statutory construction lead to the conclusion that it was not intended to permit a vendor, by the vagueness of his notice of cancelation, to send an assignee or encumbrancer of the vendee on an

extended chase for information from private sources, in order to ascertain what is to be done to avoid the forfeiture resulting from cancelation.

Here, it is respectfully submitted, the notice contained a mere mention of the default and not at all a specification of its conditions. Not only does the rule, or rather the abolition of all rules, thus applied, seem to me contrary to the intention of the statute, it appears also highly inexpedient, for it invites a looseness of practice where certainty and definiteness of statement should be required in the interest of assurance concerning real estate titles and values and highly important landed interests.

DIBELL, J. (dissenting in part.)
I agree with Justice Stone.