## LOCAL 1142 AND OTHERS v. UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, AND ANOTHER.
## FRANK MILLER AND OTHERS, INTERVENORS.

76 N. W. (2d) 481.

March 29, 1956—No. 36,757.

*Francis X. Helgesen* and *Robert C. McClure,* for appellants.
*Kenneth J. Enkel,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Plaintiffs, Local 1142, an unincorporated labor organization seeking affiliation with International Union of Electrical, Radio, and Machine Workers, CIO, (hereafter referred to as IUE) and members of its executive board, bring action against defendants, United Electrical, Radio and Machine Workers of America, a voluntary unincorporated national labor organization (hereafter referred to as UE), and its officers, for a declaratory judgment, adjudging Local 1142 to be the owner of its assets, property, funds, and collective bargaining agreements, independent of UE which had originally chartered it in 1937; and for an injunction restraining defendants from taking or interfering with such property or collective bargaining agreements or from interfering with plaintiffs' action in seeking affiliation with IUE for such local.

Plaintiffs alleged that, when Local 1142 first affiliated with UE in 1937, the latter was then affiliated with the Congress of Industrial Organization (hereafter referred to as CIO) ; that essential conditions of the contract of affiliation between Local 1142 and UE required that UE (1) continue its affiliation with CIO, so that its affiliated locals could serve effectively as collective bargaining agents on behalf of their respective members, and (2) loyally adhere to the United States and its democratic system.

They further alleged that UE had failed to perform and to continue to perform such conditions, with resulting frustration of the contract in that (1) its affiliation with CIO had been severed; and (2) it had become dominated by members of the communist party whose loyalty to the United States was in question; and that in consequence on August 4, 1954, the members of Local 1142 at a regular meeting had voted 228 to 40 to disaffiliate with UE and to affiliate with IUE, an action which it was alleged was subsequently ratified by 395 of its 500 members when they had applied for membership in the IUE.

Defendants answered, alleging that, when Local 1142 affiliated with UE in 1937 by accepting the UE charter, it had agreed thereby to conform to the UE constitution which provided that any disband-

ment, dissolution, secession, or disaffiliation of any local from UE would be invalid if *seven or more* of the membership of such local indicated their desire to retain the UE charter and continue affiliation with it; that at all times members of Local 1142 greatly in excess of the minimum of seven specified in the UE constitution had expressed their desire to retain affiliation of Local 1142 with UE; and that in consequence all steps taken by plaintiffs to bring about such disaffiliation were null and void. Defendant union also filed a cross-complaint alleging the claims set forth in their answer and praying for an order permanently enjoining plaintiffs from improperly, fraudulently, and illegally transferring the property, funds, finances, and bargaining agreements of Local 1142, or otherwise attempting to cause it to secede from UE.

Subsequently, pursuant to motion and court order, a complaint in intervention was served and filed by some 17 members of Local 1142, wherein they alleged their dissent and objection to any action on the part of said local or its officers seeking its disaffiliation or secession from UE. Therein, the intervenors realleged the allegations of defendant's cross-complaint and likewise prayed for a permanent injunction similar to that sought by defendant union. An answer to the cross-claims of defendant and to the complaint in intervention were thereafter interposed by plaintiffs.

Trial of the action commenced November 4, 1954, without a jury. On the issue of waiver, plaintiffs contended that after UE's expulsion from CIO, Local 1142 was entitled to a reasonable time before taking action for disaffiliation with UE to ascertain whether harmful consequences would result therefrom. They further contended that internal difficulties within Local 1142 had caused a delay in taking action to disaffiliate with UE, indicating that there had been no intent to waive the right of Local 1142 to act upon the frustration of the contract which occurred in 1949. They submitted evidence to show that harmful consequences had followed the 1949 breach and had increased to the extent that in 1954 a majority of the membership of Local 1142 had voted to disaffiliate with UE.

To further establish that Local 1142 had not waived its right but had been delayed because of the factors above referred to, plaintiffs proffered evidence rejected as irrelevant by the trial court that at various meetings of Local 1142 up to and including 1954 there were repeated discussions and statements of officers and members of such local indicating that the issue of disaffiliation was continuously before such local until finally acted upon at the 1954 meeting; and that the officers of Local 1142 at various times had circulated petitions among its membership asking its disaffiliation with UE and that such petitions ultimately had been signed by a majority of the members of such local prior to the time the disaffiliation vote was taken.

In addition, to show the mounting effects of the breach, plaintiffs proffered further evidence, likewise rejected by the trial court as irrelevant, to the effect that the local union officials had been continuously criticized because of communist domination of UE; that UE's money and effort were being expended to defend UE officials from charges of law violations, particularly those relating to communist affiliation; that UE's international representative regularly used one-half of his time at meetings of UE locals in defending Russian policies; that since UE's disaffiliation with CIO the local membership of UE was without opportunity of meeting with union groups in the CIO and other labor organizations; and that UE had been criticized by many community leaders and had been frequently accused of permitting communistic infiltration into the electrical industry.

On January 17, 1955, findings, conclusions, and order for judgment were made in favor of intervenors, granting their prayer for permanent injunction against plaintiffs. A memorandum of the court made therewith; certain determinations expressed by the court on November 16, 1954, at the conclusion of the trial; certain opinions of the court expressed in a letter written by the court to counsel on December 15, 1954; and certain remarks of the court made January 7, 1955, all of which were a part of the record, were made a part of the court's findings. As gathered therefrom, the court in substance found in part as follows:

That under the law as expressed by the Supreme Court of Minnesota in Local 1140 v. United Electrical, R. & M. Workers, 232 Minn. 217, 45 N. W. (2d) 408, 23 A. L. R. (2d) 1197, an implied breach of the conditions of the contract of affiliation between Local 1142 and UE occurred in November of 1949 when UE was expelled from CIO; but that notwithstanding such breach Local 1142 had remained and continued its affiliation with UE from the date of such breach until August 1954. "It appears that there were discussions among the membership with reference to the advisability of withdrawing because of this alleged breach, but that the membership did not seem to feel that anything ought to be done, and nothing was done until August, 1954. Under those circumstances, it is my opinion that the breach that was committed in 1949, the implied breach, as held by the Supreme Court of this state, was waived by Local 1142."

On appeal, plaintiffs contend (1) that the lapse of almost five years after the 1949 breach of contract by UE did not constitute a waiver of the right of Local 1142 to disaffiliate with UE and to retain the property of such local; and (2) that the trial court erred in rejecting as irrelevant certain evidence proffered by plaintiffs as bearing upon the issue of waiver.

■ As indicated above, the trial court determined that the lapse of time from the breach of the contract in 1949 to August 1954 established that plaintiffs had waived the right to act upon the 1949 breach. Such finding is based in part at least upon testimony relating to "discussions among the membership with reference to the advisability of withdrawing because of this alleged breach," leading to the court's conclusion that since "the membership did not seem to feel that anything ought to be done and nothing was done until August 1954 * * * the implied breach * * * was waived by Local 1142." Apparently, the court attached some importance to these discussions in determining that, since no definite action had been taken on the breach until August 1954, the intervening lapse of time, as well as the statements of members of Local 1142, compelled its conclusion that the right to do so had been waived.

■ Waiver has been defined as a voluntary relinquishment of a known legal right. Smith v. Smith, 235 Minn. 412, 51 N. W. (2d) 276, 32 A. L. R. (2d) 1135. To establish waiver, it must be shown that the party charged therewith knew of his legal right and intended to relinquish it. Clark v. Dye, 158 Minn. 217, 197 N. W. 209. The intent to waive, which involves an operation of the mind, must be clearly established as a fact. Farnum v. Peterson-Biddick Co. 182 Minn. 338, 234 N. W. 646. To establish intent, relevant actions and statements of the individual concerned may be considered as having a direct bearing thereon, Farnum v. Peterson-Biddick Co. *supra;* Clark v. Dye, *supra;* and it has been held that the individual concerned may testify directly as to his intent with reference to waiver. Cf. Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L.R.A.(N.S.) 231.

■ It is likewise well established that a party to a contract, which has been breached by another party thereto, is entitled to a reasonable length of time after discovery of such breach to rescind because thereof. Whitcomb v. Hardy, 73 Minn. 285, 76 N. W. 29; N. P. Ry. Co. v. United States (D. Minn.) 70 F. Supp. 836, 865; 17 C. J. S., Contracts, § 431. What constitutes a reasonable time therefor depends upon the circumstances of each case and ordinarily is a mixed question of law and fact. Whitcomb v. Hardy, *supra;* Thompson v. Jost, 108 Neb. 778, 189 N. W. 169; 17 C. J. S., Contracts, § 431; Dobie v. Sears, Roebuck & Co. 164 Va. 464, 180 S. E. 289, 107 A. L. R. 1026.

■ Plaintiffs maintain that because of the large membership of Local 1142; because of the division of such membership amongst three separate employers and three separate plants; and because of its desire to ascertain the full effect of the 1949 breach before finally acting thereon, the time which elapsed from the date of the breach until such final action at the August 1954 meeting was not so unreasonable as to establish of itself an intent on the part of the local to waive any of its rights with respect thereto. On the contrary, they contend that any statements or actions of its members or officers during this period bearing upon the breach should be considered in determining whether it had intended to waive its rights in connec-

tion therewith. In support of their claim that there had been no such intent, plaintiffs offered evidence to show that agitation amongst the members of Local 1142 for disaffiliation with UE had been almost continuous since the 1949 breach; that its officers had worked in that direction since that time; that at its meetings numerous discussions had taken place with reference thereto; that there was no indication at any time in such discussions of an intent to waive any rights because of the breach; and that, because of such discussions and actions and because of repeated statements advocating disaffiliation made by its officers, the local had finally voted to disaffiliate in August 1954.

Plaintiffs' proffers of such evidence were rejected by the court upon defendants' objection that such evidence was irrelevant. Illustrative thereof are the following questions to which such objections were sustained:

"Q. You have just heard a discussion with reference to the fact that in 1949 * * * UE ceased * * * to affiliate with CIO. I want you to * * * tell the Court what discussions occurred at that time and how often the discussions occurred among the membership of Local 1142 with respect to the affiliation or disaffiliation of that organization with UE?

\* \* \* \* \*

"Q. Mr. Kelly, getting back to what occurred after the disaffiliation of the United Electrical Radio and Machine Workers with the Congress of Industrial Organizations, did you as an officer of that local take any action or make any statements to anyone with respect to the issue, this question of whether your local union should continue to remain affiliated with the United Electrical Radio and Machine Workers of America?"

Plaintiffs' counsel directed the court's attention to the purpose of the proffered evidence as bearing upon the issue of waiver and offered proof, likewise rejected as irrelevant, as follows:

"Mr. Helgesen: The plaintiff offers to prove that * * * this witness would testify that from the date of the expulsion of UE or from the date UE ceased to be an affiliated union with the Congress of

Industrial Organizations, that the officers of Local 1142 and members of Local 1142 * * * continued to advocate the disaffiliation of the local union, that it was a matter of constant conversation among the employees, and that it was repeatedly referred to on the floor of the local union. * * * He [Mr. Kelly] would further testify that the efforts within the local spearheaded by some of the members and some of the leaders of the local finally culminated in a petition being circulated wherein the membership, that a substantial majority of the membership signed a petition which read as follows: We the undersigned want to disaffiliate from the communist dominated UE and return to CIO by joining * * * the International Union of Electrical Radio and Machine Workers, CIO. We further request that our officers and executive board members take any action necessary to protect our properties and funds from being confiscated by the UE."

It seems clear that all such evidence should have been received as bearing upon the reasonableness of time which was permitted to elapse before Local 1142 finally acted upon the breach. This seems particularly true in view of the fact that the trial court's finding on waiver appears based to some extent upon testimony submitted by defendants relative to discussions amongst the membership of Local 1142 concerning disaffiliation.

It cannot be doubted that all of the facts and circumstances referred to would have a bearing upon what constituted a reasonable time for the local to act upon the breach. Its large, widely scattered membership; its division amongst various plants; the diverse views held amongst such membership, the difficulty of ascertaining the full effect of the 1949 breach upon its capacity to do business and gain contracts would all seem to be factors to which consideration should be given in determining whether there was an intent to waive the right to act upon the breach. As indicated above, waiver must rest upon evidence which clearly establishes the intent to relinquish a known right. Since the actions and statements of the person or persons involved here have a direct bearing upon this question, it follows that the rejected testimony should have been received and con-

sidered before a finding could be properly made upon this issue. We feel that its rejection constituted material error requiring reversal and the granting of a new trial.

Reversed and a new trial granted.