# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 00-6021 NE

---

In re:                                        *
                                              *
Enggren's Enterprises, Inc.,                  *
                                              *
      Debtor.                              *
                                              *
Brian F. Leonard, Trustee,                    *         Appeal from the United States
                                              *         Bankruptcy Court for the
      Plaintiff - Appellant,               *         District of Minnesota
                                              *
        v.                                *
                                              *
R.E. Fritz, Inc.                              *
                                              *
      Defendant - Appellee.                *

---

Submitted: September 1, 2000
Filed: October 6, 2000

---

Before WILLIAM A. HILL, SCHERMER and SCOTT, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

      The trustee, Brian F. Leonard, ("Trustee") appeals from a bankruptcy court decision entered January 31, 2000 finding that by virtue of language contained in an agreement for inventory liquidation, the Trustee had waived any right to seek avoidance of a lien held by R.E. Fritz, Inc. ("Fritz"), one of the Debtor's creditors and signatory to the agreement. We have jurisdiction over this appeal from the final order of the bankruptcy court. See 28 U.S.C. § 158(b). For the reasons set forth below, we reverse.

ISSUE

The issue on appeal is whether under Minnesota law the Trustee, by entering into an agreement for inventory liquidation with Fritz, waived his right to challenge a security interest granted to Fritz. We conclude that under Minnesota law, the Trustee did not waive his right to seek avoidance of Fritz's lien on the Debtor's inventory.

BACKGROUND

The Debtor, a retailer, purchased inventory from Fritz, a distributor, on an unsecured open account for years. Fritz became concerned about the Debtor's ability to pay on that account and imposed stricter payment requirements. Specifically, Fritz demanded that the Debtor grant it a security interest in its inventory, pay on delivery for future purchases, and pay additional amounts on existing arrearages ("Additional Payments") at the time of future shipments. The Debtor granted and Fritz perfected the security interest and the Debtor made Additional Payments within ninety days before the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Two days after the Debtor filed, Fritz informed the Trustee of its security interest.

Because the Debtor was a retail operator of convenience stores, it had some inventory that was perishable and some dated inventory such as canned goods and other lower-priced consumer products of the sort typically sold by a convenience store. In effect, prompt liquidation of Debtor's inventory was necessary to get the highest possible liquidation value. After phone conversations between Fritz and the Trustee in which they discussed the expeditious disposition of the debtor's inventory, the Trustee and Fritz came to an agreement that they memorialized in a letter eleven days after the Debtor filed for bankruptcy ("Letter Agreement"). The Letter Agreement provided that Fritz would do an inventory of the salvageable food at the Debtor's three store locations with the right to purchase what it wanted at wholesale. The Trustee would sell the remaining inventory with Fritz's assistance. An itemization of the inventory purchase and purchase price would be provided to the Trustee by Fritz. The Letter Agreement expressly provided:

> It is agreed that the liens and lien rights which Fritz asserts against the inventory are preserved, and the respective rights of Fritz and the Trustee with respect thereto are not prejudiced, altered, or impacted in any manner by this Agreement.

2

When Fritz took the items in Debtor's inventory that could be resold in Fritz's own stores back into its own inventory, Fritz calculated a credit of $14,498.25, the wholesale price it would charge its own customers for the goods. Fritz then located a buyer for the remainder of the inventory and negotiated a purchase price of $17,000 with that buyer. The Trustee approved the purchase price.

After Fritz sold some of the Debtor's inventory to the buyer, it kept a portion of the proceeds. When Fritz added to the $17,000 from the sale a credit for the inventory it restocked plus legal costs, the total credit equaled $31,498.25. Fritz tendered to the Trustee only $8,458.26. That was the amount left over after Fritz offset a debit of $23,039.99 representing the amount due on the Debtor's account plus the restocking charge and legal costs from the Trustee.

The Trustee drafted a Notice to U.S. Trustee of Sale of Property ("Notice of Sale") one day prior to drafting the Letter Agreement. The Notice of Sale clearly stated the Trustee's intent to preserve his right to challenge the lien.[1]

Four days after executing the Letter Agreement, and while Fritz was liquidating the Debtor's assets, the Trustee requested documentation supporting Fritz's lien. The Trustee contacted Fritz on two other occasions. In response to the Trustee's requests, Fritz claimed that it had expected its lien to be satisfied as a condition of the Letter Agreement.

The Trustee commenced an adversary proceeding against Fritz to avoid the security interest and recover the Additional Payments under 11 U.S.C. § 547, and to recover the sale proceeds retained by Fritz under 11 U.S.C. § 549. Fritz claimed that under the Letter Agreement, the Trustee waived his right to challenge Fritz's lien. The bankruptcy court granted partial summary judgment in favor of the Trustee finding that the Additional Payments were preferential. The court ordered that the parties proceed to trial on the waiver issue and the retention of the post-petition sale proceeds. After trial, the bankruptcy court concluded that the Trustee waived his right to challenge the grant of a lien as a preference, and consequently, Fritz's retention of sale proceeds. The Trustee appeals from the decision of the trial court in favor of Fritz.

---

[1] Language in the Notice to U.S. Trustee of Sale of Property stated:
> The rights of any lienholder, and the right of the Trustee to challenge
> any such liens, are preserved and are not affected by this transaction.

## STANDARD OF REVIEW

The facts are not in dispute. This Court reviews de novo the bankruptcy court's legal conclusions, and reviews for clear error its findings of fact. Fed. R. Bankr. P. 8013. Martin v. Cox (In re Martin), 140 F.3d 806, 807 (8th Cir. 1998); Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997). Waiver is a question of fact where different inferences may be drawn. When, like in this case, only one inference can be drawn from the facts in Minnesota, waiver becomes a legal question. Meagher v. Kavli (In re Meagher), 88 N.W.2d 871, 874 (Minn. 1958). A federal court is bound by decisions of the highest state court when deciding a question of substantive law. Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998).

## DISCUSSION

Under Minnesota law, waiver is commonly interpreted as a voluntary and intentional relinquishment of a known right. Digital Resource, L.L.C. v. Abacor, Inc., 246 B.R. 357, 370 (B.A.P. 8th Cir. 2000)(interpreting waiver in the context of contract rescission under Minnesota law); Montgomery Ward & Co. v. County of Hennepin, 450 N.W.2d 299, 304 (Minn. 1990); Nygaard v. Maeser Farms, Inc., 237 N.W. 7 (Minn. 1931).[2] A waiver is not a contract and, therefore, consideration is not required to support it. Meagher v. Kavli, 88 N.W.2d 871, 878 (Minn. 1958).

A waiver must be shown unequivocally. Digital Resource, 246 B.R. at 370. Intent and knowledge are essential elements of a waiver. Clark v. Dye, 197 N.W. 209, 212 (Minn. 1924); Digital Resource, 246 B.R. at 370. A court will find a waiver only if there is a clear showing of the party's intention to waive the right, or facts from which an inference of waiver could necessarily be made as a matter of law. Clark, 197 N.W. at 209. In addition, "there must be evidence that the waiving party had full knowledge of the facts and his or her legal rights." Digital Resource, 246 B.R. 370; quoting Carpenter v. Vreeman, 409 N.W.2d

---

[2]Although the Minnesota Supreme Court states that waiver is "the intentional relinquishment of a known right or an estoppel from enforcing it," that court acknowledges that waiver and estoppel are completely different. See Clark v. Dye, 197 N.W. 209, 212 (Minn. 1924); Minneapolis Builders' Supply Co. v. Calhoun Beach Club Holding Co., 244 N.W. 53, 55 (Minn. 1932). Moreover, because the estoppel issue was not raised on appeal, we do not consider it.

258, 262 (Minn. Ct. App. 1987). A waiver may be inferred from the acts and conduct of the party against whom it is asserted. <u>Digital Resource</u>, 246 B.R. at 370; <u>Meagher</u>, 88 N.W.2d at 879.

It is undisputed that the Trustee had knowledge of the facts and his legal rights. The Trustee had knowledge of the existence of Fritz's claimed lien and when it arose. In addition, the Trustee also knew the Bankruptcy Code gave him the power to avoid preferential transfers. In no way has Fritz clearly shown the Trustee intended to waive his right to seek to avoid the lien. The plain language of the Letter Agreement allowed the Trustee to preserve his right to challenge the lien. In addition, language used in the Trustee's Notice of Sale dated one day before the Letter Agreement clearly expressed the Trustee's intent to preserve his right to challenge the lien.

Neither can an inference be made of intent to waive because the Trustee's acts prove, instead, that he sought to preserve his right to challenge the lien. The Trustee asked for documentation supporting Fritz's alleged lien within four days after executing the Letter Agreement. When he did not receive a response, the Trustee followed up on two other occasions.[3] After Fritz responded that it expected its lien to be satisfied through the Letter Agreement, the Trustee disputed Fritz's assertion that the Letter Agreement settled the issue of the validity and enforceability of the lien in a letter sent to Fritz. In the same letter, the Trustee explicitly reserved the right to continue to analyze whether the lien was avoidable in bankruptcy.

Fritz claims that an interpretation of the Letter Agreement preserving the Trustee's avoidance powers would result in a windfall for the Trustee. Specifically, Fritz argues that the Letter Agreement should be read as a whole and that Fritz relied on the Letter Agreement in its entirety as an assurance that Fritz would be compensated for its liquidation efforts by payment of its lien. In essence, in return for hours of employee labor used, use of contacts to find buyers for the inventory and equipment, and absorption of a loss, Fritz thought that the Trustee had waived his rights to challenge the otherwise avoidable lien.

Concerning Fritz's windfall argument, the Trustee argues that Fritz would be compensated by repurchasing the inventory at wholesale and reselling it at retail. Fritz rebuts that argument by reminding

---

[3] The Trustee sent letters to Fritz asking for documents supporting the existence of its lien on June 5, 1998, and June 10, 1998. Both dates fell within a month and a half after the Debtor filed for bankruptcy and within a month of the execution of the Letter Agreement.

the court that Fritz sells to its customers at wholesale, not at retail. In effect, Fritz would not be compensated by reselling the inventory because it would not make a profit.

We disagree with Fritz's assertions. Even if the Letter Agreement were read in its entirety, an interpretation that allows the Trustee to challenge the lien does not create a windfall. Fritz entered the Letter Agreement familiar with the industry and with knowledge of the facts and circumstances. It cannot now claim reliance on an unsupported belief that its lien would be allowed.

Next, Fritz argues that it would be unfair for this Court to allow the Trustee to recruit the services of Fritz while the Trustee knew that he would seek to avoid the lien. The ambiguity, Fritz claims, was the Trustee's fault as the drafter of the Letter Agreement. Fritz cites Minnesota precedent for the proposition that an ambiguous contract must be construed against the drafter. See Current Technology Concepts, Inc. v. Ire Enterprises, Inc., 530 N.W.2d 539, 543 (Minn.1995). We agree with that proposition. Still, while acknowledging the fact that the Trustee drafted the Letter Agreement, we do not find the Letter Agreement to be ambiguous. The bankruptcy court rendered decision on the Plaintiff's motion for summary judgment holding that the language in the Letter Agreement was ambiguous regarding whether it constituted a waiver of the Trustee's right to challenge Fritz's lien. To expand on the conclusion of ambiguity, at trial, the bankruptcy court noted that the Trustee created the ambiguity mainly by the use of the term "thereto" in one sentence of the Letter Agreement.

Fritz noted that the bankruptcy court looked to the Trustee's execution of a clearly drafted Notice of Sale one day prior to executing the Letter Agreement to demonstrate that Trustee could have drafted the Letter Agreement without using ambiguous language. Because the existence of the Notice of Sale was not made known to Fritz at the time it signed the Letter Agreement, Fritz agrees with the bankruptcy court's conclusion that the Trustee acted deceptively. Fritz claims that the Trustee used clear language in the Notice of Sale and then intentionally changed the language in the Letter Agreement to be ambiguous in order to obtain Fritz's liquidation services without alerting it to the fact that the Trustee would be attempting to avoid the lien.

A writing is ambiguous if it is reasonably susceptible to more than one interpretation. Metro Office Parks Co. v. Control Data Corp., 205 N.W.2d 121, 123 (Minn.1973). A judgment that a writing is ambiguous can not result from a reading that dissects sentences and phrases and reads them in isolation.

6

Instead, words, sentences, and phrases must be given a meaning in conjunction with the purpose of the agreement as a whole. Id. at 124.

Reading the Letter Agreement as a whole, we find that it is susceptible only to an interpretation that allows the Trustee to challenge the lien. In effect, the precedent cited for interpreting an ambiguous contract is inapplicable here because the Letter Agreement is clear. Even if the Letter Agreement were ambiguous, we would not construe it as a waiver. Fritz's argument is circular. A waiver requires an unequivocal showing of intent. Digital Resources, 246 B.R. at 370. If the language drafted by the Trustee were ambiguous, it could not meet the intent requirement for proving a waiver under Minnesota law.

In addition, we agree with the bankruptcy court's conclusion that the Notice of Sale is not the written memorialization of the contract between the Trustee and Fritz and that it cannot be taken into consideration when construing the contract between the parties. In effect, Fritz can not use the Notice of Sale to show that the Trustee created an ambiguity with the purpose of deceiving Fritz. Even looking at the Notice of Sale would not support Fritz's position. The fact that the Notice of Sale clearly showed intent by the Trustee to reserve his right to challenge the lien does not make it inconsistent with the Letter Agreement. Moreover, there is no evidence that the Trustee was required to transmit the Notice of Sale to Fritz. Fritz can not support its claim that the Trustee obtained Fritz's liquidation services without alerting it to the fact that the Trustee would attempt to avoid the lien.

We hold that it was not unfair for the Trustee to recruit Fritz's services. Even though the Trustee drafted the Letter Agreement, the language of that agreement was unambiguous. This Court will not refer to the Notice of Sale to show that the language of the Letter Agreement was unnecessarily ambiguous. On it face the Notice of Sale does not suggest to the reader that the Notice of Sale and the Letter Agreement were inconsistent or that the Trustee intended to deceive Fritz.

Finally, Fritz challenges the timeliness of the Trustee's appeal. Pursuant to Fed. Rules of Bankruptcy Procedure 8002(a) and (b), we hold that the Trustee timely filed his Appeal. After the bankruptcy court issued its decision on January 31, 2000, the Trustee filed a Motion for Amended Findings within ten days. The Trustee then filed a Notice of Appeal within ten days from the time when the bankruptcy court denied its motion. Consequently, Fritz's argument that the Trustee's appeal is untimely lacks merit.

CONCLUSION

Under Minnesota law, the Trustee did not waive his right to challenge Fritz's lien by executing the Letter Agreement. For the foregoing reasons, the judgment of the bankruptcy court is reversed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT