## MINNEAPOLIS BUILDERS SUPPLY COMPANY AND OTHERS v. CALHOUN BEACH CLUB HOLDING COMPANY, INC. AND OTHERS.[1]

August 12, 1932.

No. 28,879.

Brill & Maslon, for appellant.

O. A. Brecke, Arthur H. Anderson, Leonard, Street & Deinard, G. A. Will, D. E. LaBelle, L. W. Crawhall, James C. Melville, H. T.

[1]Reported in 244 N. W. 53.

*Park, Paul J. Marwin, Arnold Karlins, Robert M. Works, Kennedy & Kennedy, Tifft & Youngdahl, William P. O'Brien,* and *Bleecker & Babcock,* for respondents.

HILTON, J.

Actions for the foreclosure of mechanics' liens. Appeal by Charles Wheeler Nicol from specified portions of a judgment making his lien subordinate to a first mortgage and other liens.

At all the times here in question the title to the real estate here involved was, under the Torrens system, either in the name of and owned by the Calhoun Beach Holding Company, a Minnesota corporation, or the Calhoun Beach Club Holding Company, Inc. a Delaware corporation. The relative right, title, and interest of the two corporations at various times in and to the premises is not important.

The construction of a club and apartment building was begun upon the premises about August 1, 1927. The work continued with various temporary interruptions until about December 1, 1929, at which time it ceased. At that date the superstructure had been erected; the roof was on and the building inclosed, but work on the interior was not completed. No question is raised as to the correctness of the court's finding that the construction work on the building, including the work which followed the stopping of operations, was one continuous improvement without substantial change in the character of the project and that there never was any abandonment thereof.

Numerous concerns and workmen had performed services which had been paid for only in part. During the spring and summer of 1928 the owner of the property was without means to pay the claims or to continue the work. In order to continue operations it was necessary to raise funds by placing a first mortgage upon the property, and negotiations were in progress toward that end.

Nicol was the architect under a contract and had an unpaid claim of upwards of $26,000. He filed a mechanic's lien statement therefor on July 14, 1928, covering services rendered up to June 10, 1928. On August 15, 1928, Nicol executed, acknowledged, and delivered to

the prospective mortgagor (owner) a satisfaction of the lien, in which it was recited that the lien claim bearing date July 14, 1928, "is fully satisfied, released and discharged. And the registrar of titles of said county is hereby authorized and directed to discharge the same upon the record thereof." This release and discharge was placed of record October 15, 1928. Nicol testified that at the time he executed the satisfaction he knew of the financial situation of the project and that in order to float a first mortgage upon the property any encumbrance of record against it must be released before such a mortgage could be negotiated. He further testified that a satisfaction of his mechanic's lien was asked to enable the owner of the premises to continue construction of the building, both through a first mortgage and sale of junior securities, and also that he knew he was not to receive any money from the loan and that a satisfaction from him would be necessary in order to enable the owner to proceed with financing the building operations. On January 9, 1929, Nicol entered into a supplemental agreement with the owner and accepted a negotiable promissory note, signed by the owner and indorsed by two persons, for the full amount then claimed by him to be due, $28,564.30.

In the spring of 1928 negotiations were begun between the owner and H. O. Stone & Company, an Illinois corporation, to secure a mortgage loan. On August 10, 1928, application therefor was made by the owner to the Stone company, pursuant to which a mortgage or trust deed, dated September 1, 1928, was executed and delivered to two trustees. The mortgage was duly registered in the office of the registrar of titles October 15, 1928. The mortgage was given to secure first mortgage bonds designated as "A" bonds, in the sum of $825,000, and second mortgage bonds designated as "B" bonds, in the sum of $250,000. Bonds were issued and sold, with the mortgage as security therefor, and the proceeds properly disbursed, all as authorized by the terms of the trust deed, the trustees acting merely as the nominees of Stone & Company. There were not enough funds to complete the building and pay claims. This action was started by numerous claimants to foreclose their me-

chanics' liens. They were successful and their liens held superior to the lien of the mortgage.

Nicol came into the suit claiming equal rights with the others. On April 4, 1930, after the commencement of this action, he filed for record in the office of the registrar of titles a verified lien statement in writing, which was then duly placed of record and entered as a memorial. This was for the $26,000 mentioned in his first lien statement and in its satisfaction hereinbefore referred to. A corrected statement for $29,002.56 was filed by Nicol on April 8, 1930.

The trial court found that Nicol received no consideration for the satisfaction. Although under the evidence the court might have found otherwise, that finding is binding on respondents here. The court however held that Nicol's rights were subordinate to the lien of the mortgage, his satisfaction and release having amounted to a waiver by him of such right in so far as the trustees, and those having rights superior to the trustees, were concerned. Nicol was estopped from enforcing as to them the right which he had waived. The court in express terms found:

"That the filing of the instrument of October 15, 1928 [the satisfaction] amounted to a relinquishment of the lien claim of the said Nicol for all labor, services and material furnished by him up to the date of the filing of the original lien claim of which said instrument constituted a release. * * * It does not appear that defendant trustees named in the mortgage trust deed herein referred to, had any actual knowledge of the filing or release of the said lien claim as originally filed on July 14, 1928, or of the release on October 15, 1928. But no other reason appears for its satisfaction than to give the mortgage precedence over the lien asserted. And it does appear that the trustees had the title examined and approved after such satisfaction."

As between the owner of the property (which did not assert any defense) and Nicol, the court found that there was no intention on the part of either that Nicol's right of lien should be relinquished; and it recognized, as against the owner, Nicol's lien claim and authorized its enforcement as against such owner and the property,

but subordinate to the rights of the trustees and certain other lien claimants whose liens were held to be superior to those of the trustees. The judgment so provided.

In numerous cases cited by appellant the decisions turned on the proposition that the evidence did not disclose an intention to waive and relinquish a known legal right. Those cases are not in point here and need not be cited. In this case the evidence clearly discloses an intention on the part of Nicol to waive his lien claim in order that a first mortgage might be negotiated—to make his claim inferior to the mortgage lien; there could have been no other purpose for the satisfaction. A waiver is a mere voluntary relinquishment of a right and does not require a consideration to support it. It is the intentional relinquishment of a known right. Waiver is either the result of an intentional relinquishment of a known right or an estoppel from enforcing it. Clark v. Dye, 158 Minn. 217, 197 N. W. 209, and cases cited. See also Howe v. Kindred, 42 Minn. 433, 44 N. W. 311; Esty v. Cummings, 80 Minn. 516, 83 N. W. 420; Bergin v. Blackwood, 141 Minn. 325, 170 N. W. 508; Thompson Lbr. Co. v. Gruesner, 177 Minn. 111, 224 N. W. 849; Farnum v. Peterson-Biddick Co. 182 Minn. 338, 234 N. W. 646.

We have not overlooked the fact that the trial court found that, prior to the commencement of this action and after the filing of the satisfaction of Nicol's lien, he sold to one Lifson, for a good and valuable consideration, an interest in his account against the owner of the premises and assigned his security therefor upon an agreement in writing, and that the court concluded that Nicol was not the proper party to foreclose the lien. A personal judgment however was ordered and entered in favor of Nicol against the owner for the full amount claimed, and Nicol was given a specific lien upon the premises for the amount of said recovery and a foreclosure thereof was ordered (Nicol's claim being a subordinate one as hereinbefore stated). All questions raised by the assignments of error have been considered.

From a careful examination of the entire record we are of the opinion that the findings of the trial court from which the conclu-

sions of law were drawn had abundant support in the evidence, and that such conclusions, which resulted in the judgment appealed from, were correct.

Judgment affirmed.

WILSON, C. J. (dissenting).

Of course Nicol consented to the mortgage to precede him, and he satisfied the lien solely for that purpose. But I see no reason why he should not be on a par with the other lienholders. I do not agree that as to respondents there has been a waiver.

