KING *v.* RUSSELL.

1. BROKERS—MISTAKE—LIABILITY OF AGENT.

Real estate agent who signed receipt for partial payment on purchase of real estate as agent for party he believed for good reason, although mistakenly, to be the owner thereof *held,* not liable, in action for alleged breach of warranty of authority to act as agent, for damages for loss of pecuniary advantage would-be purchasers would have gained had defendant been the agent of the actual owner, there being no contract with defendant nor evidence of fraud on his part.

2. Principal and Agent—Liability of Purported Agent—Fraud.
   One assuming to act and enter into contracts in the name of another, as his principal, with an honest intent, openly, and fully disclosing all facts touching his supposed authority, or which may be fairly implied from his situation, and especially if he provides against his personal liability, cannot be held liable unless he be guilty of fraud.

3. Same—Personal Liability of Agent.
   Rule that if agent does not bind his principal, agent binds himself when dealing with third parties applies only where he makes a personal covenant or unless he is guilty of tortious conduct in knowingly or carelessly assuming to bind another without authority.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted October 9, 1936. Docket No. 63, Calendar No. 39,112.) Decided December 28, 1936. Rehearing denied March 2, 1937.

Action by Harold King and Elmer Amsler against Harley W. Russell for damages for alleged breach of warranty of authority to act as agent in selling real estate. Judgment for plaintiffs. Defendant appeals. Reversed without a new trial.

*Wm. J. Kearney* (*Horace M. Mechem,* of counsel), for plaintiffs.

*Adrian F. Cooper* (*Alfonso Magnotta,* of counsel), for defendant.

Wiest, J. Defendant conducted a real estate agency at Albion and had been requested by one Arthur Ball during his lifetime and, after his death, by Rose Ball, administratrix of the estate, to find a purchaser for certain land. As such agent defendant had certain negotiations with plaintiffs and on March 25, 1935, gave plaintiffs the following receipt:

"Received of Elmer Amsler and Harold King the sum of $50, as first payment on the purchase price of $1,000 for the property described (description). The terms of said sale to be $200 down and $100 on the principal sum annually with interest in addition at the rate of six per cent. per annum. All of the purchase price to be paid in five years. The first payment to be made as soon as the owner can furnish an abstract showing a merchantable title in their name.

"H. W. RUSSELL, Agent."

Plaintiff knew that defendant was acting in the capacity of an agent. Mrs. Ball testified that she asked defendant to find a purchaser for the land and—

"I have been in his office in connection with the sale of this piece of land in question a number of times. It is a little hard to give the time of my last visit to Mr. Russell's office before this receipt was made out. I imagine it was two or three days possibly. I don't recall positively. He came to my home at Duck Lake and said that he had some one who wanted to buy the farm in question. I told him it would be all right to sell it. We needed cash. After that he brought the paper to me which I forwarded to Mr. Blair. (This was the receipt.) In less than two hours a telegram came stating that he had sold the farm and I immediately telephoned Mr. Russell to that effect.   *   *   *   Samuel Blair (who was a former husband of Mrs. Ball) had a deed to the land in question at the time I talked with Mr. Russell. I did not tell Mr. Russell that. I supposed he knew it. I did not connect him up with it at all at any time. Mr. Blair has had a title since January, 1929."

Defendant did not know that the land had been conveyed to Mr. Blair. When defendant informed Mrs. Ball of the offer made by plaintiffs she said'

to him that she would sell the farm for $1,000, with $100 down and $100 a year.

Plaintiffs brought this suit to recover damages from defendant for loss of the pecuniary advantage which they would have gained had defendant been the agent of the owner of the land, and they had judgment for $1,500.

The case was tried without a jury and the circuit judge found that:

"Viewing the facts in the present case in the most favorable light to defendant, the following facts are clearly established: (1) That defendant Russell entered into a valid agreement or contract to sell plaintiffs certain real estate. (2) That he signed said contract as agent. (3) That he, in good faith, believed he had authority to represent the owner thereof as his agent. (4) That as a matter of fact he did not have authority to act as agent for the owner thereof. (5) That the owner sold the property to another. (6) That plaintiffs lost whatever benefits or profits that would have accrued to them had the contract of sale been carried out,"

and stated:

"Therefore, the principal question in this case is: 'Is the defendant Russell personally liable for the loss and damage sustained by plaintiffs when Russell, in signing said contract as agent, believed in good faith yet erroneously that he had authority to act as agent for the owner of said real estate?' "

Upon such findings the court should have entered judgment for defendant.

The case is an odd one. In a search we have been unable to find one like it in the books.

At inception the receipt was not defendant's contract but acknowledgment of money paid to him for another who was to execute a conveyance. Not be-

ing defendant's contract when given the receipt could not become such upon failure of defendant's principal to pass the title to plaintiffs. The action was not brought for deceit nor, under the evidence, could it be maintained along such line.

We quote, for its sound sense, the following from *Ogden* v. *Raymond,* 22 Conn. 379 (58 Am. Dec. 429):

"We think, likewise, upon the second point made, that it does not follow, that an agent, acting either in a public or private capacity, is, *of necessity,* made personally liable, although he does not give a cause of action against some one else. We believe the law to be, that, if a person assumes to act and enter into contracts, in the name of another, as his principal, and does this, with an honest intent, openly, and fully disclosing all the facts touching his supposed authority, or which may be fairly implied from his situation, and especially, if he provides against his personal liability, in any event, he cannot be held liable, unless he be guilty of fraud or false representation; and even then, he is not necessarily liable on the contract itself. *  *  *

"We are aware, that it is not unfrequently laid down, as a rule of law, that, if an agent does not bind his principal, he binds himself; but this rule needs qualification, and cannot be said to be universally true or correct, as the cases already cited, abundantly show. If the form of the contract is such, that the agent personally covenants, and then adds his representative character, which he does not, in truth, sustain, his covenant remains personal and in force, and binds him, as an individual; but if the form of the contract is otherwise, and the language, when fairly interpreted, does not contain a personal undertaking or promise, he is not personally liable; for it is not *his* contract, and the law will not force it upon him. He may be liable, it is true, for tortious conduct, if he has knowingly or carelessly assumed to bind another, without authority; or, when making

the contract, has concealed the true state of his authority, and falsely led others to repose in his authority; but, as we have said, he is not of course, liable on the contract itself, nor, in any form of action whatever. The question in these cases, will be found to be one of construction of the language and meaning of the person who attempts to act for another, and is a question often attended with very great difficulty and doubt; but when the intention is ascertained, that intention should ever be the rule for deciding whose contract it is.''

The court in the instance at bar has forced the contract on defendant contrary to the intention of the parties and the terms of the contract and without any personal covenant on the part of defendant.

Defendant believed and had good reason to believe that, in offering the property for sale, he was representing the owner.

Under the evidence and applicable principles of law defendant was not liable as upon contract and breach thereof, and the judgment is reversed without a new trial, and with costs to defendant.

NORTH, C. J., and FEAD, BUTZEL, BUSHNELL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.