## COLVIN LUMBER & COAL COMPANY v. J. A. G. CORPORATION AND OTHERS.

109 N. W. (2d) 425.

April 7, 1961—No. 38,126.

*Reavill, Jenswold, Neimeyer & Johnson,* for appellants.

*Nye, Sullivan, McMillan, Hanft & Hastings* and *Gilbert W. Harries,* for respondent plaintiff.

*O'Leary & Trenti,* for respondent Osier Construction, Inc.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment.

This proceeding arises out of an action commenced August 18, 1958, to foreclose a mechanics lien. In order to follow the sequence of events which gave rise to this litigation, it is necessary to present a description of the parties involved.

Colvin Lumber & Coal Company, hereinafter referred to as plaintiff, is engaged in the building supply business.

Defendant J. A. G. Corporation, a Minnesota business corporation hereinafter referred to as J. A. G., is engaged in ownership and dealing in Minnesota real estate and is wholly owned by Joseph Sher and his two sons, Alvin I. and Gerald. The Virginia Plumbing & Heating Company, a sole proprietorship hereinafter referred to as Virginia Plumbing, not a party to this suit, is engaged in the plumbing and heating business and is wholly owned by Joseph Sher. The managing agent of both concerns in Virginia, Minnesota, is Alvin I. Sher.

Francis E. O'Laughlin, a defendant hereinafter referred to as O'Laughlin, is an employee of Virginia Plumbing who entered into a construction contract to build a house and subsequently purchased it on a contract for deed dated January 1958.

The State Bank of Virginia, a defendant-respondent, loaned money to J. A. G. for the purpose of financing construction of the house.

Osier Construction, Inc., also a defendant-respondent, hereinafter referred to as Osier, is a corporation engaged in general contracting, particularly residential construction.

The facts giving rise to these proceedings are essentially as follows:

On June 11, 1957, O'Laughlin entered into a construction contract with Osier to build a home and garage for $14,600. To assist in financing the construction and purchase of the lot, J. A. G. arranged for three loans from the State Bank of Virginia. The first loan of $2,950 was made June 12, 1957, and was covered by J. A. G.'s note and was used for the lot purchase. Later loans were made on July 17, 1957, for $6,000, and on August 17, 1957, for $3,000.

During the period of construction plaintiff furnished building material and supplies and billed Osier in the amount of $8,688.28. In October 1957 Osier paid plaintiff $4,000 and received a $600 discount credit, leaving a balance due plaintiff by Osier in the amount of $4,088.28. On October 28, 1957, plaintiff delivered to Osier a signed waiver of lien rights. There is a dispute as to the waiver. The trial court found that the waiver was delivered to Osier and signed in blank with instructions to execute the same as a partial release and lien waiver in the sum of the amounts then paid, or $4,000. Notwithstanding said instructions the waiver was completed as a release for all materials by some person not under the control of the plaintiff and not in accordance with its authorization.

O'Laughlin took possession of the house in October or November 1957.

On December 17, 1957, J. A. G. negotiated with the bank and consolidated its previous notes into a single note and mortgage for $16,300, with monthly payments to begin January 15, 1958, with interest of 5½ percent. Sometime in January 1958 O'Laughlin purchased the property from J. A. G. under contract for deed in which the principal amount and monthly payments and interest coincided with the bank's mortgage and its payment provisions.

Plaintiff filed a lien against the premises on January 11, 1958, in the amount of $4,088.28. The bank at that time held an undisbursed balance of principal of $3,912.26 due J. A. G., the mortgagor. The

balance due Osier was $5,505.50 which included extra work requested by O'Laughlin in the amount of $1,872. The court found the work was deficient in the amount of $366.50.

On February 26, 1958, plaintiff executed, and on March 7, 1958, the State Bank of Virginia recorded, a satisfaction of his lien claim. In regard to this the trial court found that Osier had entered into an agreement with plaintiff that if it would execute a satisfaction of its mechanics lien Osier would secure the sum of $2,500, which was only part of the money retained by the State Bank of Virginia, and as to the balance of $1,588.28 due on the lien claim, Osier would execute to plaintiff a second mortgage covering certain real estate owned by Osier and his wife; that relying upon these representations plaintiff executed the satisfaction and J. A. G. concurred with this arrangement through its agent Alvin I. Sher. The State Bank of Virginia, however, having learned of plaintiff's intention to claim a lien, refused to disburse any of the funds remaining in its hands.

Plaintiff commenced this action to foreclose its lien.

The progression of events to this point presents issues which may be decided without complicating them with further facts. We regard the controlling issues presented by the foregoing circumstances as follows:

(1)   Is the plaintiff precluded from asserting its lien rights because of the waiver signed in blank and transferred to Osier on October 28, 1957?

(2)   Is plaintiff precluded from asserting its lien rights by virtue of the satisfaction it executed on February 26, 1958?

The district court with respect to the waiver of October 1957 found:

"* * * that Plaintiff delivered to the Defendant LeRoy Osier a receipt and waiver executed in blank and with instructions to execute the same as a partial release and lien waiver in the sum of the amounts then paid, or $4,000.00. That notwithstanding said instructions, Defendant LeRoy Osier or some person not under control of the Plaintiff thereafter completed the same as a release for all materials furnished in connection with said construction, which was not in accordance with the authorization of Plaintiff and that said waiver of liens

had been waived by Osier Construction Company and J. A. G. Corporation."

The trial court further found:

"That thereafter, and about the 26th day of February, 1958, Defendant LeRoy Osier entered into an agreement with Plaintiff agreeing that if they would execute satisfaction of said mechanics' lien he would secure for them the sum of $2,500.00, being part of the money still retained by the State Bank of Virginia, as proceeds of said mortgage and in payment of the balance of $1,588.28 would execute them a second mortgage covering certain real estate owned by LeRoy Osier and Rose M. Osier and represented to Plaintiffs that if they would execute said satisfaction he would procure for them from the State Bank of Virginia the sum of $2,500 from the amount remaining as proceeds of said mortgage. And that relying upon said representations the Plaintiff executed a satisfaction and discharge of mechanics' lien which was executed on the 26th day of February, 1958, and delivered to LeRoy Osier pursuant to said agreement and that the J. A. G. Corporation concurred in said arrangements through its agent Alvin I. Sher. That the State Bank of Virginia having learned that a notice of intention to claim lien had been caused to be filed by the Plaintiff, refused to disburse the funds remaining in its hands."

■ A review of the record indicates that the findings are supported by the evidence. It seems clear that by virtue of the circumstances surrounding the execution of the satisfaction on February 26, 1958, Osier and J. A. G. waived their right to assert the lien waiver delivered by plaintiff on October 28, 1957.

With respect to what constitutes a waiver, we find in 20 Dunnell, Dig. (3 ed.) § 10135c, the following:

"* * * Any conduct on the part of the person entitled to insist upon the right which is inconsistent with an intention to claim it may amount to a waiver as a matter of law; the intent to waive being a matter of legal inference from the disclosed inconsistent conduct. Waiver need not be proved by express declaration or agreement. It is more often proved by acts and conduct, and declarations not expressly waiving

the right in question. But the facts shown must be such as to fairly and reasonably lead to the inference that the person against whom it is to operate did in fact intend to waive his known right. Silence, when there is no opportunity to speak, is not a waiver."

We believe that the trial court's finding with respect to the agreement on about February 26, 1958, as to the satisfaction of mechanics lien for the sum of $2,500 and the balance to be secured by a second mortgage on real estate owned by Osier, is supported by the evidence. Such conduct is totally inconsistent with the right of Osier and J. A. G. to claim that plaintiff had previously waived its right to a mechanics lien for the balance due it. Consequently, the trial court's finding that the waiver executed in October was subsequently waived is sustained.

■ With regard to the second issue, does the satisfaction executed by plaintiff and filed preclude its rights to a mechanics lien?

In Minnesota we believe the rule to be that consideration or estoppel is necessary to support a satisfaction or release of a mechanics lien. Abbott v. Nash, 35 Minn. 451, 29 N. W. 65. Detrimental reliance is sufficient to constitute consideration to support the satisfaction of a lien. Home Supply Co. Inc. v. Ostrom, 164 Minn. 99, 204 N. W. 647. In the instant case there appears to be no detrimental reliance on the satisfaction on the part of any of the parties since the State Bank of Virginia did not disburse any more funds after the execution of the satisfaction.

Furthermore, the $2,500 was not paid to the plaintiff under the agreement found by the court and supported by the evidence. The execution of the second mortgage to plaintiff on property owned by Osier was completed but we do not believe that this part of the consideration was sufficient to render the lien satisfaction totally valid. Accordingly, as the trial court found, the lien satisfaction executed on February 26, 1958, is properly vacated in so far as it released from the lien the interest of J. A. G. and O'Laughlin to the extent of $2,500, and plaintiff is entitled to $2,500 of the undisbursed funds in the hands of the State Bank of Virginia and, thereafter, all interest of the plaintiff in the premises shall be extinguished.

■ Further facts involved in this litigation give rise to other issues raised by J. A. G. and O'Laughlin, appellants. Those facts are as follows: Osier did considerable building in and around Virginia and vicinity and purchased its plumbing supplies from Virginia Plumbing. On March 27, 1958, Osier owed to Virginia Plumbing an amount of $6,916.33 on various job orders. On March 27, 1958, Joseph Sher, the owner of Virginia Plumbing, assigned to J. A. G. accounts receivable due from Osier aggregating $6,916.33. On the day on which the assignment was formally executed at Virginia, Osier filed in the clerk of court's office in Duluth his petition for the involuntary dissolution of his company. On April 10, 1958, the court made and filed its order for statutory dissolution under the provisions of the Minnesota Business Corporation Act and appointed a liquidating receiver. The receiver has filed a cross-complaint against O'Laughlin and J. A. G. for the balance due under the construction contract.

J. A. G., as assignee, now seeks to offset, against the receiver of Osier in his claim for the balance due under the construction contract, the Virginia Plumbing claim against Osier.

J. A. G. seeks to do this pursuant to Minn. St. 301.54, subd. 6, which provides:

"Any claim may be pleaded as an offset or counterclaim in any action brought against the claimant by the receiver or receivers, except in an action for the balance due upon a subscription for or contract to purchase shares."

The trial court, in respect to this, found that the assignment was executed with reasonable cause to believe that Osier Construction, Inc., was insolvent and with intent of securing a preference in the distribution of the assets of said Osier Construction, Inc., and concluded: "That the assignment executed by the Virginia Plumbing and Heating Company to the J. A. G. Corporation is an attempt to secure a preference in the distribution of the assets of said insolvent and is therefore subordinate to the rights of said receiver to said amount."

We agree with the trial court that in effect § 301.54, subd. 6, provides that an offset may be pleaded but this does not mean that it must be allowed. On the contrary we believe that the purpose of Min-

nesota corporation dissolution proceedings, §§ 301.49 to 301.57, is the same as specifically appeared in the Minnesota corporation law, G. S. 1866, c. 34, § 169, which provided that the court would have jurisdiction in equity and could make such orders, injunctions, and judgments therein as justice and equity require. Section 301.54, subd. 6, is not interpreted to mean that all counterclaims pleaded are to be ipso facto allowed.

We have considered appellants' citations of authority and argument on this point and do not consider them controlling.

■ The trial court, in conjunction with its conclusion that the State Bank of Virginia pay to plaintiff $2,500 and thereafter all the interest of plaintiff in the property would be extinguished, further ordered that J. A. G. and O'Laughlin pay Osier's receiver $3,005.50, the total balance remaining unpaid on said contract and extras, and that the receiver was entitled to a common-law lien on the premises, which lien was subordinate to the lien of the State Bank of Virginia and to the $2,500 lien of plaintiff. Appellants here object to the imposition of a personal judgment against O'Laughlin, because he was acting only as an agent for the disclosed principal, J. A. G., and further that a personal judgment could not be entered against Margaret O'Laughlin since she was not a party to the construction contract.

We believe appellants' assignment of error in this regard is well taken since the trial court found that Francis O'Laughlin acted as agent for J. A. G. in dealing and negotiating for the construction of said dwelling and with their consent ordered extras in connection with the contract, and it appears that Osier looked to J. A. G. for payment. Since he was acting as agent for a disclosed principal within his authority, he cannot be held personally liable. Lundstrom Const. Co. v. Dygert, 254 Minn. 224, 94 N. W. (2d) 527; Firestone Tire & Rubber Co. v. Robinson, 225 Minn. 493, 31 N. W. (2d) 18; 1 Dunnell, Dig. (3 ed.) § 217.

Margaret O'Laughlin was not a party to the construction contract. There is reference in the record to her participation in ordering the extras; however, the court found her husband had ordered them. Under these circumstances she cannot be held personally liable by Osier.

Although the court made reference to a common-law lien, we be-

lieve that the lien involved is that which occurs upon docketing of the personal judgment. Minn. St. 548.09 provides that a judgment requiring the payment of money shall be a lien on all interest in real property owned by the judgment debtor. See, also, Wallace T. Bruce, Inc. v. Najarian, 249 Minn. 99, 81 N. W. (2d) 282; Minn. Const. art. 1, § 12.

We have fully examined appellants' other objections and do not find that they compel reversal other than as previously indicated.

Affirmed in part, reversed in part.

MR. JUSTICE OTIS, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.