JENNINGS D. McLELLAN AND ANOTHER, COPARTNERS
d. b. a. JENNINGS D. McLELLAN & SON, v.
RAY HAMERNICK AND OTHERS.

118 N. W. (2d) 791.

December 28, 1962—No. 38,662.

*Fine, Simon & Schneider, William I. Fine,* and *Ralph S. Schneider,* for appellants.

*Peterson & Popovich* and *Fred N. Peterson, Jr.,* for respondent Becker.

*Lawrence L. Lenertz,* for respondent Kostka Electric Company.

*Kueppers, Strong & Kueppers* and *Fred A. Kueppers,* amicus curiae.

KNUTSON, CHIEF JUSTICE.

This is an action to foreclose a number of mechanics liens.

To begin with there were other liens involved that have since been settled. Reduced to simple terms, the action as tried revolves around the following facts: Nathan and Beverly Elaine Simon were the owners of a house in St. Paul. On March 31, 1958, they engaged Ray Hamernick to construct an addition to the house for a total cost of

$11,471.27. The contract contained the provision: "Job to be paid as work progresses and balance upon completion." Hamernick sublet the plumbing work to Donald E. Becker, who was to furnish the labor and material for that phase of the project. He likewise engaged Kostka Electric Company to do the electrical work. The project was substantially completed in July 1958. There is no dispute but that the work done and material furnished by Becker was reasonably worth $1,231. The reasonable value of Kostka's work and material was $414.75. Neither of the subcontractors has been paid. From time to time the Simons made payments to Hamernick on the contract, which amounted to a total sum of $7,500 up to July. When the work was substantially completed in July, Hamernick requested payment of the balance due on the contract, which then amounted to $3,971.27. Simon told him to get lien waivers from those who had furnished material or labor on the job and he would "give him money for the work done." Hamernick procured lien waivers from Becker and Kostka and others not involved here and gave Becker and Kostka checks which he told them to hold until he had received his money from Simon. The checks were not good and were never cashed. On July 21, 1958, Hamernick delivered the Becker and Kostka waivers and others to Simon. The next morning he received a check for $1,500 and was told that he would receive the balance of his money after August 1. Hamernick did not use the money he had received from Simon to pay Becker or Kostka but instead, a short time later, filed his petition in bankruptcy. Simon has paid lienholders and claimants something over $4,000 since July for work done and materials furnished, which was considerably more than the amount he owed Hamernick.

The trial court, without a specific finding or any memorandum indicating his reason therefor, disregarded the waivers and ordered judgment for Becker and Kostka and a foreclosure of their liens. The Simons appealed from the judgment.

The determinative question here is whether Becker and Kostka are bound by the lien waivers they executed.

The Becker lien waiver reads:

"The undersigned acknowledges having received payment of

$1,231.00 from Ray Hamernick, contractor, in full payment of all plumbing materials and labor furnished and performed at 1776 Beechwood, St. Paul, Minnesota, and for value received hereby waives all rights which have been acquired by the undersigned to file mechanic's lien against said premises for labor, skill or material furnished to said premises prior to the date hereof."

The Kostka lien waiver reads:

"The undersigned acknowledges having received payment of One and no/100 DOLLARS ($1.00) from Ray Hamernick in full payment of all Electrical Labor and Material by the undersigned delivered or furnished to (or performed at) 1776 Beechwood, St. Paul, Minn., and for value received hereby waives all rights which may have been acquired by the undersigned to file mechanics' liens against said premises for labor, skill or material furnished to said premises prior to the date hereof."

Apparently it is the claim of Becker and Kostka, and, as far as we can determine, it was the opinion of the trial court, that inasmuch as Becker and Kostka did not receive their money from Hamernick, or since Simon did not pay Hamernick the full amount of the liens covered by the waivers in reliance on the waivers, there was no consideration for them and the lienholders still could file a lien on the property. With this we cannot agree. While there is some doubt in some of our cases,[1] we have frequently held that a lien waiver must be based upon a consideration.[2] But consideration need not flow from the property owner to the one entitled to a lien. It may consist of detriment suffered by the property owner, who, having no knowledge of a secret mental reservation of the lienholder, in good faith does something to his detriment in reliance on the waiver. The evidence is conclusive here that the Simons knew nothing about any secret understanding between Hamernick and his subcontractors. Simon paid $1,500 in reliance on the waivers furnished him. While no part of that amount was used by

[1] See, Minneapolis Builders Supply Co. v. Calhoun Beach Club Holding Co. Inc. 186 Minn. 635, 244 N. W. 53.

[2] Abbott v. Nash, 35 Minn. 451, 29 N. W. 65.

Hamernick to pay Becker and Kostka, there is no assurance that any additional amount would have been so used, even if Simon had paid the full amount due.

In Home Supply Co. Inc. v. Ostrom, 164 Minn. 99, 100, 204 N. W. 647, we said:

"It is the claim of appellant that the waiver of the lien is not supported by a consideration. There must be a consideration. Abbott v. Nash, 35 Minn. 451, 29 N. W. 65. Lindahl, relying on the waiver, gave to the contractor his check for $190 and also a lien waiver on the property of one Brogan for $510, for which he was entitled to a lien because of work done thereon for Ostrom Brothers. Even though no consideration passed to the plaintiff at the time of its agreement and waiver of the lien right, yet Lindahl's reliance and action on such waiver should be treated as sufficient consideration. There is a consideration if the promisee, being induced by the agreement, does anything legal which he is not bound to do or refrains from doing anything which he has a right to do—it is sufficient that something valuable flows from him or that he suffers some prejudice or inconvenience and that the agreement is the inducement to the transaction."

In Crane Co. v. Advance Plumbing & Heating Co. 177 Minn. 132, 135, 224 N. W. 847, 848, we said:

"* * * Such releases are ordinarily furnished contractors to enable them to get money from somebody. Where that is not the special purpose, the usual receipted bill or invoice adequately serves all others. So when money is paid upon the faith thereof, as the parties must expect it to be, the releasor cannot then qualify or limit the reasonable purport of his own language by some mental reservation of his own, or some remote and far-fetched implication to which his language is susceptible only when read with no reference to the circumstances of its origin and intended use."

The same rule is followed in Lundstrom Const. Co. v. Dygert, 254 Minn. 224, 94 N. W. (2d) 527, where the waiver was in a form almost identical with that used by Kostka.

In Colvin Lbr. & Coal Co. v. J. A. G. Corp. 260 Minn. 46, 109 N. W.

(2d) 425, the facts are not the same as they are in the case now before us. Substantially what we held in that case was that the party entitled to assert a lien waiver had itself waived that right. We said (260 Minn. 51, 109 N. W. [2d] 429):

"* * * the trial court's finding that the waiver executed in October was subsequently waived is sustained."

On the record before us, the evidence is conclusive that the lienholders executed unambiguous waivers of their liens and that the homeowner, in reliance on such waivers, paid the general contractor $1,500. The mere fact that the general contractor (wrongfully or because of other demands) failed to pay his subcontractors cannot deprive the homeowner of his right to rely on the waivers. The subcontractors relied on Hamernick, as they had a right to do, but, having executed waivers of their rights against Simon, they have no right to demand payment from him when Hamernick has defaulted.

The owner of the property was entitled to protect himself from liens against his property by requiring lien waivers before he paid the balance due the contractor. If those furnishing material and labor were willing to execute such lien waivers, relying upon the contractor's promise to pay them, they should not be heard to complain after the homeowner has altered his position in reliance on such waivers. Any other rule would render lien waivers valueless. If the homeowner must pay the contractor at his own risk, even if he has waivers from all laborers and materialmen entitled to file liens, it is difficult to see what value such waivers can have. It is clear here that, if it had not been for the lien waivers executed by Becker and Kostka, Simon could have used the $1,500 he paid Hamernick to discharge liens against his property. No matter how we look at it, he has lost $1,500 by relying on the waivers if the liens filed are now enforceable. It follows that he has acted to his detriment, which furnishes adequate consideration for the waivers.

On this record, defendants Nathan Simon and Beverly Elaine Simon are entitled to judgment.

In view of our decision on the main issue, other questions raised by the appeal need not be determined.

Reversed.