## WILLIAM H. KELLEY AND ANOTHER
### v.
## GLADYS OLSON AND OTHERS.

136 N. W. (2d) 621.

August 20, 1965—No. 39,355.

*Wolner & Haglund,* for appellants.
*Fiori L. Palarine,* for respondents.

OTIS, JUSTICE.

The plaintiffs Kelley are property owners who have recovered damages in the sum of $7,200 against their real estate agents and a bonding company in an action arising out of the agents' refusal to deliver a deed executed by third parties. The defendants have appealed from the judgment.

We have considered the plaintiffs' motion to dismiss the appeal and

find it to be without merit. Judgment was initially entered on October 18, 1963, and not on September 24, 1963, as plaintiffs assert. The appeal taken on December 31, 1963, was therefore timely.

The real estate in question is located in the village of Mound on Lake Minnetonka. A portion of the premises was rented to tenants; part was used as the plaintiffs' residence; and the remainder was operated as a tavern. Early in 1960 the plaintiffs became delinquent in their obligations and undertook to sell the property. To that end they retained the defendants Olson, doing business as A. Odden & Co., under a listing contract which called for a sale price of $23,500. Defendants secured an offer from Mr. and Mrs. Idor Lawson, to whom Mrs. Olson was related, for $18,500. The offer was rejected by plaintiffs but was followed by a second proposal, which they accepted. Pertinent portions of the contract are as follows:

"PURCHASE AGREEMENT

"Minneapolis, Minn., March 24, 1960

"RECEIVED OF Idor E. Lawson & Erma J. Lawson, husband and wife the sum of Forty Four Hundred & no/100 ($4400.00) Dollars Equity in 132 Circle A. Drive, Wayzata, Minn. as earnest money and in part payment for the purchase of property at (Seton) Mound, Minn. on lakeshore, known as Kelley's Tavern (Wm. F. Kelley & Elmyra Kelley, husband and wife) situated in the County of Hennepin, State of Minnesota, and legally described as follows, to-wit: * * *

* * * * *

all of which property the undersigned, as agent for the owner, has this day sold to the buyer for the sum of Twenty One Thousand One Hundred Sixty One & 16/100 ($21,161.16) Dollars, which the buyer agrees to pay in the following manner:

* * * * *

"The delivery of all papers and monies shall be made at the office of A. Odden & Co. Lake Mtka Office."

April 7, 1960, was fixed as the closing date. However, as that time approached, efforts to secure a beer license for the Lawsons proved unavailing and ultimately their application was denied by the village coun-

cil. Consequently, the defendants refused to deliver to the plaintiffs the deed and other papers necessary to vest them with title to the Lawson property which constituted the earnest money in the March 24 contract. Meanwhile, in anticipation of the conveyance, the Kelleys had terminated their leases and discontinued their tavern business.

On July 22, 1960, the tavern was completely destroyed by fire, and the Kelleys received $15,000 in insurance for the loss of their building and fixtures. They subsequently sold the lot for the sum of $4,200 and paid the balance which they owed on their contract for deed at a discount from $14,192 to $10,150.

This action was brought against the Olsons, their partnership and corporation, against their bonding company, and Mr. and Mrs. Lawson. It was dismissed with prejudice as to Fred Olson individually and as to the Lawsons and the Odden corporation. No cross appeal or other review has been sought by plaintiffs.

■ In considering this matter we are mindful of the scope of review where appeal is taken from a judgment and not from an order denying a new trial. Nevertheless, we believe the interests of justice require that there be a new trial under Minn. St. 605.05.

■ The complaint seeks damages based on fraud. It alleges, among other things, the following:

"That the said defendants, except the General Insurance Company of America, wilfully and maliciously entered into a conspiracy to defraud the plaintiffs and in the furtherance thereof made certain false and fraudulent misrepresentations upon which plaintiffs relied and which they believed to be true as the result of which the plaintiffs were prevailed upon and induced to sign a purchase agreement on or about March 24, 1960, to sell the said premises for the sum of $21,161.16, amounting to $2,338.24 reduction from the original asking price therefor.

\* \* \* \* \*

"That on or about April 7, 1960, defendants Idor E. Lawson and Erma J. Lawson executed and delivered to the defendant A. Odden & Co. at its Lake Minnetonka office a warranty deed to the said Circle A Drive property in the names of plaintiffs in accordance with the said

agreement and in performance thereof; that thereafter plaintiffs demanded from defendants delivery of the said warranty deed and possession of the said premises and that said demands have been refused, the last demand therefor being made on July 8th, 1960, and that plaintiffs have on many occasions demanded that said defendants and purchasers perform their part of said agreement by delivering the warranty deed thereto and surrendering possession thereof but that they have at all times wilfully, maliciously and unlawfully refused to do so.

"That by reason of the wilful, malicious and unlawful conduct of the defendants as hereinabove set forth, and the wrongful breach of the said agreement the plaintiffs have sustained general and special damages herein amounting to at least $15,000.00."

There was testimony that subsequent to the execution of the purchase agreement Mrs. Olson and the Lawsons, without the knowledge of the Kelleys, undertook to increase the existing mortgage on the Lawson homestead from $6,900 to $8,500. However, this transaction was never consummated. The Kelleys also testified that they signed the purchase money agreement on the false representation by the Olsons' agent that the consideration to them was equivalent to the $23,500 specified in their listing agreement rather than the $21,161.16 recited in the contract itself.

While we do not have the plaintiffs' closing argument in the record, it seems to have been their contention that the fraud giving rise to their cause of action for damages consisted of a failure to disclose the relationship between the Lawsons and Mrs. Olson; a misrepresentation of the consideration flowing to them under the purchase agreement; and the abortive attempt to increase the mortgage on the Lawson property which would have diminished the equity the Kelleys were to receive. In view of the fact that title was not transferred and the contract never performed, it is not clear how this alleged fraud can give rise to an action for damages. Plaintiffs inconsistently seek to enforce the very contract they claim was fraudulently induced. In any event, the court ignored plaintiffs' theory of the litigation and charged the jury that liability, if any, was predicated on a breach of contract. The court in his charge stated, among other things:

" * * * Now, in this particular case, the plaintiffs have brought suit here, as you know, claiming a breach of contract occurring on April 7th and claiming that the Olsons in their various roles, both as a corporation and Gladys as an individual, as are stated here in the verdicts, have breached a contract as a result of which they suffered certain damages. * * * and that is the issue that you have to decide, whether or not that contract was consummated as the Kelleys claim on April 7th, or whether it wasn't. * * * Therefore, your first question that you will have to decide among yourselves is whether there was a contract in the meeting of the minds that had agreed on April 7th, and that the Olsons, both Gladys individually and the corporation, breached that contract."

At the conclusion of the charge, plaintiffs excepted to the court's failure to treat their cause of action as one in tort. While defendants were content to submit the matter as a contract case, their defense hinged on the claim that the entire transaction was conditioned on the Lawsons being able to obtain a beer license from the village of Mound, which issue the jury resolved against them.[1] The defendants Olson denied there was any other contract between themselves and plaintiffs except the listing agreement, and we have some difficulty in understanding the theory on which defendants can be held for a breach of contract under the charge given.

Objection was sustained to defendants' offer of proof that the deed delivered to the Olsons by the Lawsons was subject to the following condition:

"A. Odden & Co. is not to execute or deliver this Warranty Deed on our home at 132 Circle A Drive S., Wayzata, Minn., until we receive our Beer License on Kelleys' Tavern at Mound, Minn.

"A. Odden & Co.          /s/ Idor E. Lawson
"/s/ Gladys L. Olson          /s/ Erma J. Lawson"

The offer of proof was couched in the following terms:

"My offer of proof is Defendants' Exhibit 9, which is an agreement or instruction by Mr. and Mrs. Lawson to Odden Realty Company, that

---

[1] See, Formanek v. Langton, 271 Minn. 59, 62, 134 N. W. (2d) 883, 885.

Odden Realty Company is not to execute or deliver a warranty deed on the home at 132 Circle A Drive South in Wayzata until the Lawsons receive a beer license on the tavern in Mound. That was submitted in connection with and actually as a part of an undated warranty deed, which is introduced here as Plaintiffs' Exhibit G, for the purpose of showing that the deed was delivered by the Lawsons to the realty company on the condition that it be used only in the event the Lawsons were successful in getting a beer license; and that, therefore, this is a conditional delivery and does not constitute delivery of the deed, even to the real estate company involved here."

In our opinion, it was reversible error to sustain the objection. Since the authority of an agent is necessarily limited by the conditions and terms imposed on him by his principal, the agreement in question was not hearsay but was competent and germane to the issue of whether the Olsons had a right to deliver the Lawson deed.[2] It was clear to each party that defendants were acting as the disclosed agent of the other.[3] For one thing, by the very terms of the purchase money contract the buyer, not the seller, was to pay defendants' commission. With the knowledge of the Kelleys and without their objection, the Olsons were to handle all of the details of closing for both parties. In that capacity they had no right to exceed the authority imposed on them by either. An agent who does not misrepresent or conceal the extent of his authority is not responsible to a third party for the nonperformance of a disclosed principal's contract.[4] Hence, if subsequent to the execution of the March 24 purchase agreement the Lawsons added conditions more restrictive

[2] Ruppert v. Muelling, 132 Minn. 33, 35, 155 N. W. 1039, 1040; Hanson v. Johnson, 161 Minn. 229, 201 N. W. 322; see, also, Gustafson v. Elmgren, 211 Minn. 82, 83, 300 N. W. 203, 204.

[3] James E. Carlson, Inc. v. Babler, 144 Minn. 125, 129, 174 N. W. 824, 825; Lovell v. Marshall, 162 Minn. 18, 23, 202 N. W. 64, 66; Diedrick v. Helm, 217 Minn. 483, 499, 14 N. W. (2d) 913, 922, 153 A. L. R. 649; Christensen v. Redman, 243 Minn. 130, 136, 66 N. W. (2d) 790, 794.

[4] Ammon v. W. A. White Brokerage Co. 183 Minn. 71, 73, 235 N. W. 533; Firestone Tire & Rubber Co. v. Robinson, 225 Minn. 493, 31 N. W. (2d) 18; Mackenzie v. Ryan, 230 Minn. 378, 41 N. W. (2d) 878; Witt v. John

than the scope of the Olsons' initial authority, the Olsons cannot be held liable for failing to deliver to the Kelleys the Lawson deed.

■ With respect to the measure of damages, the court gave the following instruction:

"* * * 'Where a party sustains a loss by reason of a breach of contract, he or she is, so far as money can do it, to be placed in the same situation with respect to damages as if the contract had been performed.' In other words, the damages, which one party to a contract may recover for a breach thereof by the other, are such as either arise naturally or in the usual course of things from the breach itself **may reasonably be supposed to have been contemplated by the parties when making the contract as a probable result of the breach.**"

The court further charged with respect to mitigation of damages as follows:

"* * * The defendants, on the other hand, have argued and have argued [sic] figures to you that certain amounts were received from fire insurance, the sale of the land, and so forth and so on, in mitigation of damages. Now, in the question of damages, and, as I say again, I am not deciding you have to get to that question, but if you do, then you must, in your own mind, decide what damages the Kelleys did suffer as a result of this breach, and then you will have to detract therefrom what you find that they received in spite of the breach."

Upon being requested by the jury to give additional instructions, the court repeated the general rule it had previously given and added:

"* * * Now, this means that where one party to contract seeks to recover for a breach thereof, they are entitled to whatever their so-called out-of-pocket loss may be, if there is any, * * *."

We believe the charge inadequately dealt with the measure of damages and compels a new trial. Although the instructions requested by de-

Blomquist, Inc. 249 Minn. 32, 34, 81 N. W. (2d) 265, 266, 59 A. L. R. (2d) 1451; Colvin Lbr. & Coal Co. v. J. A. G. Corp. 260 Minn. 46, 53, 109 N. W. (2d) 425, 430; King v. Russell, 278 Mich. 529, 270 N. W. 775; Restatement, Agency, § 328.

fendants were also deficient, they more nearly reflected the correct rule than those which were given.

The Kelleys have advanced a number of theories to explain the probable manner in which the jury reached the sum of $7,200, but none finds support either in the charge or in the authorities. They are based largely on speculation as to the actual equity in the Lawson property and make no allowance for the fact the Kelleys retained title to their tavern and were relieved of the obligation to convey it. It was the duty of the court to spell out to the jury the treatment to be given the amounts realized from the fire and the sale of the lot. However, this aspect of the matter was apparently left almost entirely to counsel's closing argument.

As we view the measure of damages, it is the difference between what the Kelleys agreed to pay for the Lawson property and its market value, provided the latter is greater than the former, as to which there should either be deducted or added the difference between the price for which the Kelleys contracted to sell their property and its actual value.[5] If it is found that the Kelleys were to receive more than their property was worth, the amounts realized from their fire insurance and the proceeds of the subsequent sale of the lot must be considered in mitigation of damages to the extent it made them whole.[6]

As an element of damages, the court permitted recovery for loss of profits. In our opinion, the evidence adduced to support this claim consisted almost entirely of speculation and conjecture. Mrs. Kelley made the bald statement that her profits from the tavern were $20 to $30 a day. Her original records were destroyed in the fire but no secondary evidence of any kind was offered except two isolated daily reports. She did not produce from other sources original income tax returns or bank records, nor attempt to estimate or itemize the expenses which were incurred and paid to offset her gross income. Unless upon a retrial the evidence is more substantial, we hold that loss of profits should not again be submitted to the jury.

■ With respect to the bonding company, there can be no liability

---

[5] Home Counsellors, Inc. v. Folta, 246 Minn. 481, 75 N. W. (2d) 417.
[6] See, Costello v. Johnson, 265 Minn. 204, 208, 121 N. W. (2d) 70, 74.

under any conditions. Their obligation was undertaken pursuant to Minn. St. 82.03, subd. 3, as a prerequisite to defendants' engaging in the real estate business. The pertinent language of the indemnity agreement was as follows:

"Now, Therefore, if the principal shall indemnify any person from loss resulting from fraud, dishonesty, forgery or theft in connection with any real estate or business opportunity transaction, or from the failure to make prompt payment to the person entitled thereto of any amounts received, and by any real estate or business opportunity salesman it/he employs, then this obligation shall be void; otherwise to remain in full force and effect."

Clearly the bond in question was not intended to indemnify the public for breach of contract in the absence of fraud, dishonesty, forgery, theft, or failure to make payment of funds received. No authority is cited, and we are aware of none, permitting recovery under the circumstances which here existed. The defendant General Insurance Company of America is therefore entitled to judgment.

Reversed as to General Insurance Company of America, and remanded for a new trial as to defendants Gladys Olson individually and Gladys Olson and Fred B. Olson as copartners doing business as A. Odden & Co.