**HUTCHISON BROTHERS EXCAVATING COMPANY, INC., Appellant,**

v.

**Lester DWORMAN et al., Appellees.**

**No. 6899.**

District of Columbia Court of Appeals.

Argued March 7, 1973.

Decided July 20, 1973.

---

4. Dawson v. Dawson, D.C.App., 193 A.2d 70 (1963).

---

John Geyer Tausig, Washington, D. C., for appellant.

Irving B. Yochelson, Washington, D. C., with whom Leonard L. Rosenberg, Washington, D. C., was on the brief, for appellees. C. Richard Beyda, Washington, D. C., also entered an appearance for appellees.

Before KELLY, FICKLING and HARRIS, Associate Judges.

KELLY, Associate Judge:

Dworman Building Corporation (Dworman), an owner of property in the District of Columbia,[1] and L. J. Robinson, Inc. (Robinson), a general contractor, entered into an agreement for the construction of a mall and office building. Subsequently, appellant Hutchison Brothers Excavating Company, Inc. (Hutchison), entered into a subcontract with Robinson to perform the excavation work necessary for the building project.

On May 27, 1971, having completed all work under its excavation contract, Hutchison submitted a bill for $29,670 to Robinson. When payment of the bill was not forthcoming appellant, on July 1, filed a notice of intent to hold mechanic's liens for the amount of its bill against the building project with the Office of the Recorder of Deeds of the District of Columbia.[2] The owners, not present in the District of Columbia, were notified by posting a copy of the notice on the building,[3] and by certified mail, return receipt requested. Hutchison also requested a statement of the terms of the contract and the amount still owed to Robinson by Dworman.[4]

Sometime before July 8, Dworman deposited $136,000 with American Real Title Corporation with instructions that $100,000 of the funds be disbursed to Robinson upon receipt of satisfaction of the three mechanic's liens filed by Hutchison on July 1. Additionally, at some point John Baker, Secretary-Treasurer of Hutchison, informed its attorney, John Tausig, Esq., that he had made an agreement with Robinson to accept a partial payment

. . . due to the fact that he [Robinson] did not get the amount of money he expected, and that if he did not pay some of the money to different subs, that the job in effect would be stopped. And, he asked me if I would accept a lesser amount so that he could give some money to each one of the subs, and he was expecting another payement within one week, and then at that time he would pay my final payment.[5]

On July 8, Mr. Tausig met with Mitchell Furst, the vice-president of the title company. His instructions from Mr. Baker

---

1. The property is apparently owned by Dworman Building Corporation and Lester Dworman, who signed the contract on behalf of the corporation. References in this opinion to Dworman and the owners are interchangeable.

2. D.C.Code 1967, § 38–103.

3. D.C.Code 1967, § 38–105.

4. D.C.Code 1967, § 38–107, provides:
Any subcontractor . . . shall be entitled to demand of the owner or his authorized agent a statement of the terms under which the work contracted for is being done and the amount due or to become due to the contractor executing the same, and if the owner or his agent shall fail or refuse to give the said information, or wilfully state falsely the terms of the contract or the amounts due or unpaid thereunder, the said property shall be liable to the lien of the said party demanding said information, in the same manner as if no payments had been made to the contractor before notice served on the owner as aforesaid.

5. Tr. at 21.

were to deliver releases of the mechanic's liens upon receipt of the amount due since Robinson had informed Baker that the money would not be disbursed without such releases. Tausig gave Furst the releases either in exchange for a $100,000 check payable to Robinson or two checks, one representing the partial payment agreed to by Baker and the other, a postdated check, representing the balance still owed.[6] Dworman was not informed of, nor was it a participant in this arrangement.

Since Hutchison was never authorized by Robinson to cash the postdated check a second mechanic's lien for $8,000 covering the same work was filed against the property by appellant on July 30. Again, appellant requested a statement of the terms between the contractor and the owners, and the amount still owed to the contractor.

Appellant thereafter sued to enforce its mechanic's lien against the property and to recover the balance owed by Robinson under the subcontract. Prior to trial Dworman sought to have the case continued until termination of a suit then pending in the United States District Court for the District of Columbia in which Robinson was attempting to have its own mechanic's lien enforced against the property. The motion was denied as was a subsequent motion made by Dworman in the District Court to consolidate the two cases. By stipulation the parties agreed that the issue of whether Dworman owed any money to Robinson on July 30 would not be tried but would be held in abeyance pending determination of that issue in District Court. Following a nonjury trial the court found that appellant had waived its claim against Dworman by completely releasing its me-

chanic's liens on July 8, and dismissed the complaint for the failure of Hutchison to carry its burden of proof. In response to motions to alter or amend the judgment, supplemental orders were issued dismissing the complaint against the owners only and awarding judgment for $8,000 in favor of appellant against Robinson.

Appellant contends that the trial court erred in finding the mechanic's lien unenforceable whether or not Dworman was still indebted to Robinson in an amount sufficient to satisfy appellant's claim. It argues that if the owners did owe the contractor $8,000 or more after July 30, the date of the filing of the second mechanic's lien, it should not be estopped from enforcing a second lien because the owners were not prejudiced by the earlier disbursement of funds in reliance on the release of the first mechanic's liens.

Alternatively, appellant argues that even if Dworman did not owe Robinson any money on or after July 30, the lien should be enforced because Dworman failed, after written demand, to provide a statement of the terms of the contract between itself and Robinson as required by D.C.Code 1967, § 38–107, and therefore Dworman should be liable "in the same manner as if no payments had been made to the contractor before notice served on the owner . . . ."

Dworman contends that the trial court was correct in finding that appellant, having once released its lien, had waived the right to assert it again. Reliance is placed on Stevens v. Gordon, 48 App.D.C. 604, 605 (1919), in which subcontractors agreed to release their rights to file liens on buildings when told by the general contractor that the owner "absolutely refused to make

6. It was Furst's recollection that he gave Tausig a $100,000 check payable to Robinson. It was Tausig's recollection that he received two checks payable to Hutchison, both made out by Robinson, one for $25,481.76 and another (postdated) for $10,000 (subsequently exchanged for a postdated $8,000 check). In its order the trial court found only that on July

8 Hutchison's attorney received two checks in a total amount to cover the balance due. The discrepancy is immaterial for it is agreed that after satisfaction of two of the mechanic's liens and payment of other expenses, there is a balance of $8,000 due Hutchison from Robinson.

final payment until the releases were signed by all parties", and that the sum he would receive would be sufficient to cover their claims. The owner and contractor settled their accounts and final payment was made to the contractor. When the contractor failed to satisfy the claims of the subcontractors they sought equitable relief from the court in the form of setting aside the settlement between the owner and contractor, investigating the state of the account between them, and if anything were found due, impressing it with a trust in their favor. This relief was denied, the court finding not only that to grant it would be highly inequitable but that the subcontractors, having waived their legal remedy under the Mechanics' Lien Statute, were in no position to invoke the powers of a court of equity. The court also noted that had they so desired the subcontractors could have ascertained from the owner the state of his account with the contractor prior to delivering the releases.[7]

■ We find *Stevens* to be dispositive of this case regardless of whether or not Dworman was still indebted to the contractor when the second lien was filed, for it is clear that appellant had waived its right to a mechanic's lien against the property. As the court said in a similar case, West v. Pinkston, 44 Utah 123, 138 P. 1152, 1154 (1914),

> If the owner of the premises acts upon the statements and representations of the claimant, and a lien is nevertheless filed, the enforcement of which is resisted by the owner of the premises upon the ground that the claimant has waived his right to a lien or is estopped from enforcing it for the reason that to do so

would result in injury or prejudice to the owner, the courts, ordinarily, will not—and ought not—permit a lien to be enforced. . . .

Similarly, in McLellan v. Hamernick, 264 Minn. 345, 118 N.W.2d 791, 794 (1962), the court noted:

> The owner of the property was entitled to protect himself from liens against his property by requiring lien waivers before he paid the balance due the contractor. If those furnishing material and labor were willing to execute such lien waivers, relying upon the contractor's promise to pay them, they should not be heard to complain after the homeowner has altered his position in reliance on such waivers. Any other rule would render lien waivers valueless. . . . [8]

■ As for appellant's argument that refusal to enforce its lien amounts to judicial repeal of D.C.Code 1967, § 38–107, we must disagree. Under that section, an owner may incur liability to a subcontractor in an amount greater than that still owed to the contractor if the owner fails to answer the subcontractor's demand for a "statement of the terms under which the work contracted for is being done and the amount due or to become due to the contractor executing the same". While it is true that appellant demanded such a statement upon filing its mechanic's liens of July 1, and that demand was never acted on by Dworman, by releasing the liens appellant must be held to have waived its right to that statement which would, in any event, be of little use to appellant after the releases were given.

Affirmed.

---

7. D.C.Code 1967, § 38–107 was originally enacted in 1901. (31 Stat. 1385, ch. 854, § 1243.)

8. *See also* R. D. Reeder Lathing Co. v. Allen, 66 Cal.2d 373, 57 Cal.Rptr. 841, 425 P.2d 785 (en banc, 1967).